TRAVIS v DREIS & KRUMP MANUFACTURING COMPANY

GOLEC v METAL EXCHANGE CORPORATION

Docket Nos. 101028, 102147. Argued March 5, 1996 (Calendar Nos. 1-2). Decided July 31, 1996. Rehearing denied in *Golec, post,* 1205.

Aimee Sue Travis brought an action in the Montcalm Circuit Court against Dreis and Krump Manufacturing Company and Greenville Wire Products Company, her employer, seeking damages that occurred when a press brake manufactured by Dreis and Krump that she had been assigned to operate double cycled, injuring her hands. She alleged that Greenville Wire knew the press was prone to double cycle, yet required her to work in the face of that known danger and failed to warn her. Greenville Wire contended that the plaintiff's exclusive remedy was under the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1), because she had failed to establish a prima facie case of intentional tort. The court, James K. Nichols, J., granted summary disposition for Greenville Wire, ruling that the facts as alleged failed to show that the defendant had the requisite specific intent or that it knew an injury was certain to occur and wilfully disregarded that knowledge. The Court of Appeals, D. E. HOLBROOK, JR, P.J., and MURPHY and J. C. KINGSLEY, JJ., reversed (Docket No. 163715). Greenville Wire Products Company appeals.

Stanislaw Golec brought an action in the Wayne Circuit Court against Metal Exchange Corporation, doing business as Continental Aluminum Company, and certain of its individual supervisory employees, seeking damages for personal injuries sustained when a furnace he was loading with scrap metal exploded, showering him with molten aluminum. He alleged that the defendants' conduct constituted an intentional tort because of their failure to require him to wear protective clothing, to implement safety rules, to provide a tractor with splash guards, and to eliminate the hazards of excessive moisture and closed aerosol containers from the scrap aluminum. The court, Samuel A. Turner, J., granted the defendants' motion for summary disposition, finding that the claims were barred by the exclusive remedy provision of the WDCA. The Court of Appeals, GRIBBS, P.J., and R. P. HATHAWAY, J. (WEAVER, J., not participating), reversed, reasoning that the pleadings sufficiently established that

the defendants had actual knowledge of a specific danger that was certain to result in an injury to an employee not properly protected with appropriate clothing and equipment and that they wilfully disregarded that knowledge by requiring him to work under the same conditions that caused him an earlier minor injury (Docket No. 151639). The defendants appeal.

In an opinion by Justice BOYLE, joined by Justice MALLETT, and an opinion by Justice RILEY, joined by Chief Justice BRICKLEY and Justice WEAVER, and an opinion by Justice LEVIN, joined by Justice CAVANAGH, the Supreme Court *held*:

Plaintiff Travis has presented facts insufficient to establish an intentional tort. While her employer was negligent and even reckless, the statute requires a specific intent to injure. On the other hand, plaintiff Golec has alleged facts sufficient to create an issue for the jury regarding whether supervisory personnel of defendant Metal Exchange Corporation possessed actual knowledge that an injury was certain to occur, and wilfully disregarded that knowledge. It is a question of law for the court whether the facts as alleged in the plaintiffs' complaints are sufficient to constitute intentional torts. However, whether the facts alleged are in fact true is an issue for the jury. In *Golec*, the claims against all the individual defendants except defendant Rziemkowski must be dismissed. Golec has shown that defendant Rziemkowski may have acted with the intent to injure. While the exclusive remedy for negligence of a coemployee is the WDCA, coemployees whose intentional acts cause injuries are liable in tort to injured coemployees.

1. An employee's exclusive remedy for a personal injury or occupational disease is the recovery permitted under the Worker's Disability Compensation Act, except where an employer commits an intentional tort. MCL 418.131(1); MSA 17.237(131)(1) provides that an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. "Deliberate act" encompasses both commissions and omissions and includes a situation in which an employer consciously fails to act. "Specifically intended an injury" means that the employer must have had in mind a purpose to bring about given consequences. Where the employer is a corporation, a particular employee must possess the requisite state of mind to prove an intentional tort. To state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee.

2. MCL 418.131(1); MSA 17.237(131)(1) additionally provides that an employer is deemed to have intended to injure if it had actual knowledge that an injury was certain to occur and wilfully dis-

regarded that knowledge. The provision applies where there is no direct evidence of intent to injure and intent must be proved with circumstantial evidence. Knowledge must be actual; constructive, implied, or imputed knowledge is not enough. Nor is it sufficient to allege that the employer, or in the case of a corporation, a managerial employee, should have known or had reason to believe, that injury was certain to occur. "Certain to occur" sets a high standard in which the laws of probability or conclusory statements by experts play no part. The employer must be aware that injury is certain to occur from what it does or fails to do. "Willfully disregard" underscores that the employer's act or failure to act must be more than mere negligence. An employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur. The employer's state of mind may be inferred from its actions when there is no direct evidence of the employer's intent to injure.

3. In *Travis*, the plaintiff was unable to establish that her employer possessed the specific intent to injure her. Although the employer may have negligently permitted an unsafe work environment to exist, no intentional tort was committed. Her sole remedy is under the WDCA. In *Golec*, the plaintiff established a genuine issue of material fact with regard to whether his employer disregarded actual knowledge that an injury was certain to occur, requiring remand for further proceedings.

Justice RILEY, joined by Chief Justice BRICKLEY, and Justice WEAVER, concurring in part and dissenting in part, stated that summary disposition was properly granted in *Golec*. Accepting the facts pleaded by Golec as true, they did not demonstrate an intentional tort. The employer simply did not have actual knowledge that an injury was certain to occur. Consequently, the trial court's granting of summary disposition in this matter should be affirmed.

Justice LEVIN, joined by Justice CAVANAGH, writing separately, stated that because § 131(1) does not require a one hundred percent probability that an action will cause a result to deem an injury intentional, absolute unavoidability of the consequences cannot be the standard for determining when an event is certain to occur. Properly understood, the term "certain" in the statute must mean some unacceptably high, but not complete, risk. It is higher than substantial certainty and represents a greater danger than the risk necessary to support negligence or even gross negligence. Nonethe-

less, it cannot mean a one hundred percent likelihood that an injury will occur, because such certainty, as a practical matter, does not exist.

A single exposure to a great risk can be just as certain to cause an injury as repeated exposures to lesser risks. Subsection 131(1) is a limitation on the risks to which employers can subject their employees, and therefore whether an injury is certain to occur for purposes of the statute obviously is a question of probabilities. By randomly limiting the dangers covered by the intentional tort exception to continuous risks, the lead opinion improperly limits the appropriate and logical extent of that provision. The rule announced in these cases will directly affect those workers who face grave, if intermittent, dangers; workers who are distinguished only by the type, rather than the magnitude, of the risk they endure.

When all the guidance available from the Legislature and judiciary is considered, it is clear that the dangers to which the defendants exposed the plaintiffs are well within the range of risk contemplated by the statute. The relevant inquiry is whether the level of risk that the defendant knew about was excessive, a question for the jury, not whether it anticipated the full potential for disaster. The lead opinion confuses a continual danger that only occasionally manifests itself in an injury with an intermittent danger. Because both the employers in these cases exposed workers to risks within the coverage of subsection 131(1), both claims should be reinstated.

*Travis* reversed.

*Golec* affirmed in part and remanded for further proceedings.

207 Mich App 1; 523 NW2d 818 (1994) reversed.

208 Mich App 380; 528 NW2d 756 (1995) affirmed in part.

*Law Offices of Jeffrey H. Feldman, P.C.* (by *Paul L. Kaliszewski*), for the plaintiff in *Travis*.

*Kepes, Wine & McNeilage, P.C.* (by *Carol A. McNeilage*); *Paskin, Nagi & Baxter, P.C.*, of counsel (by *Jeannette A. Paskin* and *Daniel J. Seymour*), for the plaintiff in *Golec*.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*) for the defendant in *Travis*.

*Honigman, Miller, Schwartz & Cohn* (by *William D. Sargent, Russell S. Linden,* and *Cameron J. Evans*) for the defendants in *Golec*.

Amici Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

*Varnum, Riddering, Schmidt & Howlett* (by *Joseph J. Vogan* and *James R. Stadler*) for American Society of Employers.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Leonard B. Schwartz* and *Patrick Burkett*), for Michigan Association of Insurance Companies, the Amerisure Companies, and Michigan Chamber of Commerce.

*Clark, Klein & Beaumont, P.L.C.* (by *Dwight H. Vincent* and *J. Walker Henry*), for Michigan Manufacturers Association.

BOYLE, J. These consolidated cases involve the proper construction of the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1). The precise issues framed by the parties are (1) whether the facts alleged by the plaintiffs are sufficient as a matter of law to state a question for the jury regarding liability within the intentional tort exception of the WDCA, (2) whether it is a question for the court or the jury whether an intentional tort has been committed by an employer, and (3) the extent to which, if at all, plaintiff Stanislaw Golec

may maintain his intentional tort claim against the individual coemployees.

We would hold that plaintiff Travis has presented facts insufficient to establish an intentional tort. While her employer was negligent and even reckless, the statute requires a specific intent to injure. Defendant Greenville Wire did not exhibit such an intent. On the other hand, plaintiff Golec has alleged facts sufficient to create an issue for the jury regarding whether supervisory personnel of defendant Metal Exchange Corporation possessed actual knowledge that an injury was certain to occur, and wilfully disregarded that knowledge.

Regarding the second issue, it is a question of law for the court whether the facts as alleged in the plaintiffs' complaints are sufficient to constitute intentional torts. However, whether the facts alleged are in fact true is an issue for the jury. Regarding the third issue, which was only raised in *Golec*, we would hold that the claims against all the individual defendants except defendant Rziemkowski must be dismissed. Plaintiff Golec has shown that defendant Rziemkowski may have acted with the intent to injure. While the exclusive remedy for negligence of a coemployee is the WDCA, coemployees whose intentional acts cause injury are liable in tort to the injured coemployee.

FACTS AND PROCEDURAL HISTORY

I

*TRAVIS v DREIS & KRUMP MFG CO*

Plaintiff Aimee Sue Travis was employed by Greenville Wire Products Company. On March 30, 1989, after plaintiff worked for the company for about

seven months, she was assigned to operate a press brake equipped with a die that formed refrigerator wires.

Plaintiff's supervisor, William J. Clarke, showed plaintiff how to operate the press. He instructed her that she was to place the wires into the die with her hands, push the palm buttons to cycle the press, then reach into the die space to remove the wires after they had been formed. The press was designed not to run unless the operator's hands were on the palm buttons. Clarke operated the press for a few cycles without incident to demonstrate to plaintiff how to do the job.

While plaintiff had used the press one time previously, she had never been required to place her hands in the die space of this press or any other machine. After plaintiff operated the press for about an hour, the press "double cycled," that is, it cycled without plaintiff pressing the palm buttons. This was the only time the press had double cycled while plaintiff was operating it. Unfortunately, plaintiff's hands were in the die space when the press double cycled, and she was unable to remove her hands before the die came down. Plaintiff suffered severe injuries to her hands, including the amputation of both of her fifth fingers.

Unbeknownst to plaintiff, the press had been malfunctioning for approximately one month. Clarke testified in his deposition that maintenance employees had been adjusting the exterior mechanisms of the press, which would temporarily correct the problem, sometimes for one to two weeks, and sometimes only for a day or two. Clarke testified that, except in plaintiff's case, each time the press double cycled, the operator was able to identify the problem, avoid

injury, and report it to Clarke. At that time, the press would be shut down until further adjustments could be made that corrected the problem. Clarke opined that because the press cycled so slowly, an operator could avoid injury even when it was double cycling.

Rodney King, Greenville Wire's toolroom supervisor, testified in his deposition that he learned the day before plaintiff's injury that the press was double cycling again when another press operator refused to run it for that reason. King believed that the problem was such that exterior adjustments could not correct it. King concluded that the press had to be torn down in order to properly repair it, and consequently advised Clarke to shut it down. Clarke refused to do so, King testified, because Clarke believed that would take too long and the parts would have to be sent out.

Plaintiff filed a complaint in Montcalm Circuit Court against both Dreis and Krump, the manufacturer of the press, and Greenville Wire, her employer. Regarding defendant Greenville Wire, plaintiff alleged that her employer knew the press was double cycling and thus posed a risk of amputation, yet required her to work in the face of that known danger. Plaintiff also alleged that defendant failed to warn her that the press was double cycling.

Greenville Wire moved for summary disposition under MCR 2.116(C)(10), contending that plaintiff's exclusive remedy was under the Worker's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1), because she had failed to establish a prima facie case of the intentional tort exception to the exclusive remedy provision of the WDCA. The trial court granted defendant's motion, ruling that the facts as alleged by plaintiff failed to show that defendant

had the requisite specific intent, or that it knew an injury was certain to occur and wilfully disregarded that knowledge.

The Court of Appeals reversed. 207 Mich App 1; 523 NW2d 818 (1994). It determined that plaintiff had alleged facts sufficient to constitute an intentional tort. It reasoned that Clarke had been informed that the press was double cycling, that it was dangerous, and that someone would be hurt if it was run. Clarke failed to shut down the machine in order to make the proper repairs because doing so would take too long and the machine was needed to produce parts. 207 Mich App 7. Further, Clarke assigned plaintiff, a relative novice, to the press without informing her of its tendency to double cycle. Accordingly, it remanded the matter to the trial court. *Id.*

II

*GOLEC v METAL EXCHANGE CORP*

Plaintiff Stanislaw Golec worked for defendant Metal Exchange Corporation, doing business as Continental Aluminum Company, an aluminum smelting factory. Plaintiff had returned to work for defendant Metal Exchange Corporation in early December, 1988, after an eighteen-month disability leave. After his return, plaintiff worked first as a packer then as a furnace loader. On the night of December 27-28, 1988, plaintiff was assigned to load furnace number two with scrap metal. Plaintiff used a tractor equipped with a bucket to scoop the scrap from a pile on the floor and place it into the furnace.

Normally, the furnace operators used a John Deere tractor equipped with a Plexiglass splash guard when loading the furnace with scrap, however that vehicle

was out of service. Instead, plaintiff used a tractor without a splash guard. Plaintiff was wearing no protective clothing except a helmet and mask and alleged in his complaint that he was not provided with other protective clothing.

Plaintiff alleged that defendant was aware that the scrap was damp and that aerosol cans were present in the scrap, and that scrap that is wet or that contains closed aerosol cans could lead to an explosion if placed in the furnace. Defendants contended that its employees were instructed to examine the scrap for aerosol cans before loading it into the furnace, and were also instructed on how to safely load damp scrap into the furnace. The defense also asserted that plaintiff failed to follow these instructions. Plaintiff acknowledged in his deposition that he was instructed to load wet scrap slowly, and it would "melt." However, contrary to the defendants' assertions, plaintiff testified that he was not told to separate closed aerosol cans from the scrap pile.

At about 11:00 P.M., a minor explosion occurred in furnace number two, splashing plaintiff with molten aluminum. Plaintiff suffered slight burns to his left hand. Plaintiff immediately reported the explosion to the shift leader, Bogdan Mazur. Plaintiff indicated to Mazur that he believed the explosion was due to either the presence of closed aerosol cans in the scrap pile, or the fact that the scrap pile was wet.

Mazur testified that he telephoned his supervisor, Richard Rziemkowski, at home. Mazur informed Rziemkowski that plaintiff was injured by a small explosion at furnace number two and that the scrap was damp because rain was dripping on the scrap pile from a leak in the roof. Mazur testified that

Rziemkowski told him that plaintiff must return to work. Rziemkowski, however, does not remember being called by Mazur on this date.

Plaintiff returned to his duties at furnace number two. At about 3:00 A.M., minutes before plaintiff was scheduled to take a break,[1] a huge explosion from the furnace showered plaintiff with molten aluminum. Plaintiff was severely burned over thirty percent of his body.

Plaintiff filed suit in Wayne Circuit Court against both his corporate employer and individual supervisory employees, alleging that their conduct constituted an intentional tort. Plaintiff's claims were based on defendants' failure to require him to wear protective clothing, failure to implement safety rules, failure to provide him with a tractor equipped with splash guards, and failure to eliminate the hazards of excessive moisture and closed aerosol containers from the scrap aluminum.

Defendants moved for summary disposition under MCR 2.116(C)(10), contending that there was no genuine issue of any material fact. Defendants also contended that plaintiff's cause of action was barred as a matter of law by the exclusive remedy provision of the WDCA, MCL 418.131(1); MSA 17.237(131)(1), because plaintiff could not establish that an intentional tort existed.

Plaintiff attached a report of an expert, Robert L. Hume, a mechanical engineer, to his response to defendants' motion. Hume reviewed depositions, pho-

---

[1] Mazur testified that he was approaching plaintiff and was only about three to four yards away from plaintiff when the explosion occurred. Mazur was intending to take over plaintiff's job at the furnace while plaintiff was on break.

tographs, answers to interrogatories, MIOSHA reports, and the applicable safety standards. He indicated that,

> [t]he employer knowing full well that explosions had taken place at the furnace on other occasions nevertheless directed Mr. Golec to continue to charge the furnace with wet and contaminated material, using an unguarded powered industrial truck and without requiring personal protective gear. This provided for a situation in which the employer knew or should have known that under the circumstances an injury was certain to occur. It was only a matter of when and how severe.

Hume concluded that

> an injury was certain to occur and [that defendant] knew or should have known that this certainty existed under the conditions of operation involved in charging the furnace.

The trial court granted defendants' motion on the theory that plaintiff's claims were barred by the exclusive remedy provision. It reasoned that plaintiff's well-pleaded allegations, taken as true, could not establish as a matter of law the existence of an intentional tort so as to fall outside the exclusive remedy provision of the WDCA.

Plaintiff appealed, and the Court of Appeals reversed. 208 Mich App 380; 528 NW2d 756 (1995). It reasoned that its review of the pleadings, accepting all allegations in favor of plaintiff's claim as true, sufficiently established that defendants had actual knowledge of a specific danger—an explosion of molten aluminum—that was certain to result in an injury to an employee not properly protected with appropriate clothing and equipment. 208 Mich App 387. It further reasoned that the defendants wilfully disregarded that knowledge by requiring plaintiff to work under

the same conditions that produced his earlier minor injury. *Id.*

ANALYSIS

I

INTRODUCTION

The present version of subsection 131(1) of the WDCA was enacted in 1987 PA 28. It indicates that an employee's exclusive remedy for a personal injury or occupational disease is the recovery permitted under the Worker's Disability Compensation Act. The one exception to this recovery scheme is when an employer commits an intentional tort. Subsection 131(1) provides:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. *An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1); MSA 17.237(131)(1) (emphasis added).]

The Court's primary task in this case is the proper construction of the intentional tort exception as set forth in 1987 PA 28.

II

BACKGROUND OF THE INTENTIONAL TORT EXCEPTION

Before its amendment by 1987 PA 28, subsection 131(1) was silent regarding whether an employee could sue in tort for an intentional tort suffered at the hands of his employer. This Court construed the prior version of subsection 131(1) in *Beauchamp v Dow Chemical Co*, 427 Mich 1; 398 NW2d 882 (1986).

In *Beauchamp*, the plaintiff was exposed at work to the chemical "Agent Orange" and, as a result, suffered physical and mental injuries. He sued his employer, alleging in part that his employer intentionally misrepresented and fraudulently concealed potential danger, intentionally assaulted him, and committed the tort of intentional infliction of emotional distress. The first issue before the Court was whether intentional torts should be excluded from coverage under the WDCA. The Court determined that intentional conduct by an employer was not within the act's exclusivity provision. It reasoned, "[b]ecause the Legislature intended to limit and diffuse liability for accidental injury by no means suggests the Legislature intended to limit and diffuse liability for intentional torts. Accidents are an inevitable part of industrial production; intentional torts by employers are not." 427 Mich 16.

The *Beauchamp* Court's next task, then, was to construe the parameters of the newly created "intentional tort exception." The version of the WDCA before the Court was silent with regard to whether intentional torts were covered by its provisions. The Court reviewed other jurisdictions and recognized two lines of cases. Some jurisdictions required an actual intent to injure in order for conduct to fall outside the

parameters of the worker's compensation system. 427 Mich 20-21. Other jurisdictions defined intentional tort more broadly. 427 Mich 21. The latter line of cases did not limit recovery to cases in which the consequences were intended, but rather allowed tort recovery where the employer knew that the consequences of his actions were certain, or substantially certain, to occur. The Court explained that under this latter line of cases, the employer may be deemed to possess the intent to injure if it is substantially certain that the injury will occur as a consequence of its actions. 427 Mich 21-22.

*Beauchamp* adopted the "substantial certainty" standard, reasoning:

> The problem with the true intentional tort test appears to be that it allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker. . . . Prohibiting a civil action in such a case "would allow a corporation to 'cost-out' an investment decision to kill workers." *Blankenship v Cincinnati Milacron Chemicals*, 69 Ohio St 2d 608, 617; 433 NE2d 572 (1982) (Celebrezze, J., concurring). [427 Mich 25.]

Under *Beauchamp*, the substantial certainty standard is defined as:

> If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs. If the injury is substantially certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well. [427 Mich 21-22.]

*Beauchamp* held that the plaintiff's complaint had pleaded a prima facie case of the intentional tort exception to the WDCA, reversed the decision of the Court of Appeals, and remanded for further proceedings.[2]

The concurring opinion in *Beauchamp* attempted to clarify the newly adopted standard. 427 Mich 28 (opinion of BOYLE, J.). It agreed that intentional injuries are outside the scope of the WDCA, and that "for an intentional injury to escape the exclusivity bar, the plaintiff need not prove that the employer intended the actual injury which occurred." 427 Mich 28. It also indicated that the substantial certainty standard should be strictly construed, requiring the plaintiff to prove a " 'virtual certainty' of injury" in order to prevail. 427 Mich 31.

III

LEGISLATIVE HISTORY OF 1987 PA 28

1987 PA 28 was a comprehensive reform of the worker's compensation system in Michigan. It changed the definition of disability, clarified when an injured employee would have to coordinate his benefits, and clarified the exclusive remedy provision, subsection 131(1), of the WDCA. Of relevance to these cases is the amendment of subsection 131(1), which occurred less than five months after *Beauchamp* was released. The parties in these cases do not dispute that the amendment is a legislative reaction to *Beauchamp*, and an attempt to clarify the intentional

_____

[2] *Beauchamp* separately held that the plaintiff's breach of contract claim against his employer for breach of the duty to provide a safe workplace was barred by the exclusive remedy provision of the WDCA.

tort exception to the act's exclusive remedy provision. As previously observed by this Court:

> [W]hen an amendment is enacted soon after controversies arise regarding the meaning of the original act, " 'it is logical to regard the amendment as a legislative interpretation of the original act . . . .' " *Detroit Edison Co v Revenue Dep't*, 320 Mich 506, 519-521; 31 NW2d 809 (1948), quoting 1 Sutherland, Statutory Construction (3d ed), § 1931, p 418. [*Detroit v Walker*, 445 Mich 682, 697; 520 NW2d 135 (1994).]

The earliest version of the bill proposing an amendment of § 131 originated in the Senate. It would have created an exception to the exclusivity provision for "a civil claim for damages resulting from disease, disability, or death where the employer *deliberately intended* both the act that proximately caused the disease, disability or death and *deliberately intended* the resultant disease, disability, or death." Senate Analysis Section, SB 67, March 23, 1987, p 2 (emphasis added).[3]

The House responded to the Senate bill by proposing slightly different language. Its version would have stated: "an intentional tort . . . would exist only when an injury was the result of a deliberate act of the employer and the employer specifically intended the injury. An employer would had to have had actual knowledge that an injury was *likely* to occur and have disregarded this knowledge." House Legislative

---

[3] The original version of the bill also provided that once an employee files a claim or receives benefits under the Worker's Disability Compensation Act, he would be precluded from pursuing other remedies. Likewise, the filing of a civil suit would preclude the employee from requesting benefits under the act. This portion of the bill was deleted from the final version.

Analysis Section, SB 67, May 7, 1987, p 1 (emphasis added). The third version of the bill was enacted as 1987 PA 28 and contains the present language of subsection 131(1).

The Senate Fiscal Agency Analysis explained that "the bill not only would allow the pursuit of civil claims as an alternative to the workers' compensation system in *extreme cases* (i.e., 'intentional injury'), but also would ensure the workability and usefulness of the system by specifying that the Act would be an exclusive remedy in all other situations." Senate Fiscal Agency Analysis, SB 67 (Third Analysis), May 26, 1987, p 3 (emphasis added).

Several senators spoke on the record regarding the new worker's compensation legislation. 1987 Journal of the Senate 1233-1235. The senators acknowledged that the final version of the bill was a compromise. Senator Dillingham stated:

> The primary concern of the Senate has been the impact of the *Beauchamp vs. Dow Chemical* Supreme Court decision on the exclusive remedy provision of the Workers' Disability Compensation Act. It has been the goal of the Senate to restore the integrity of the exclusive remedy provision and avoid a new window of litigation that would threaten the financial stability of Michigan business and government.
>
> The section 131 statutory language agreed to in conference is designed to restore the complete and absolute status of the exclusive remedy provision in Michigan's workers' compensation law. Under the proposed new language, the one and only exception to the exclusive remedy provision is an action for an intentional tort where the employer intended the injury to the employee. . . . [I]t is our intent in proposing this language, that the injured employee may only bring an intentional tort action in a court of law if the employer knowingly and deliberately injured the employee. An act which is only somewhat certain or likely to cause

injury or which has a less than 100 percent certainty of causing an injury to a specific employee does not constitute intent to injure under this language. The employer must know with certainty that a specific employee will be injured in order to constitute an intentional tort.

There has been some concern that an intentional tort exception with too many qualifications might permit a lawsuit if the employer only had knowledge of a workplace condition that could cause injury. It is our intent, in section 131, to establish language which is unqualified and straight forward [sic] under which knowledge of a condition does not constitute an exception to the exclusive remedy provision.

## Senator Cherry also spoke on record:

> I rise to urge adoption of the conference report. I think it represents a very reasonable compromise that has gotten us beyond the deadlock.

*     *     *     .

> [W]e have rushed headlong to restrict the recent Supreme Court's *Beauchamp* decision. . . . It is clear that intentional torts are actionable and not prohibited by the exclusive remedy provision. The change in the standard although narrowing the substantial certainty test does not preclude the specific cases which the Supreme Court indicated were actionable under the *Beauchamp* decision. In *Cerna vs. Statewide Contracts* [sic],[4] the facts outlined by the court fall squarely within the new exemption. In *Cerna*, there was a deliberate act[,] certainty that an injury would occur and willful disregarding of the knowledge. A similar result

---

[4] *Serna v Statewide Contractors, Inc*, 6 Ariz App 12; 429 P2d 504 (1967). In that case, the plaintiffs' decedents were laying a sewer line in a deep ditch. The twenty-five-foot-high walls of the ditch caved in, burying the decedents alive. The employer had ignored recommendations of the safety inspector, made over a five-month period, to supply ladders to the workers in the ditch and to shore the walls of the ditch.

would attend in the film recovery case[5] cited as an example by the court. In that case, the facts showed a deliberate act, certainty of an injury and a willful disregard of a knowledge of an injury.

If the House had originally adopted the substitute offered by Senator Engler, I am concerned that the public and exclusive remedy proposal may will [sic] have eliminated a cause of action for the type of case that arose in Genesee County, the *Barnes vs. Doublefield Glass* [sic].[6] I am convinced that the conference report would allow such a decision to stand.

We interpret the statute's history as indicating that the language of the final bill was a compromise. Senator Cherry's comments indicate that although *Beauchamp* needed to be tightened, there was still room for tort recovery in this area. Senator Dillingham advocated a much more rigorous standard. The legislation finally adopted did not restrict recovery to "true" intentional torts. Our task is therefore to discover what compromise the Legislature struck.

IV

CONSTRUING THE STATUTE CONSISTENTLY
WITH LEGISLATIVE INTENT

At issue are two sentences of subsection 131(1). Our goal is to construe those sentences consistently with the intent of the Legislature. In construing the

---

[5] *People v Film Recovery Systems,* unpublished opinion of the Cook County, Illinois, Circuit Court, issued June 14, 1985 (Docket Nos. 83-11091, 84-5064), a case discussed in *Beauchamp* at 427 Mich 23, addressed *infra* at 185.

[6] *Barnes v Double Seal Glass Co,* 129 Mich App 66; 341 NW2d 812 (1983). In *Barnes,* the decedent's supervisor ordered a cart to be loaded with glass plates, five times heavier than its capacity. Because it was overloaded, the cart was difficult to push, so the supervisor ordered many employees, including the plaintiff, to shove the cart in an effort to move it. The load of glass then fell onto the decedent.

words set forth in this subsection, we follow the directive set forth in *Jennings v Southwood*, 446 Mich 125, 136; 521 NW2d 230 (1994): "Generally, when a statute fails to define an operative term, we define the term in accordance with the Legislature's intent." In this case, our task is difficult because the final result was a compromise.

The first sentence reads, "An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury." MCL 418.131(1); MSA 17.237(131)(1). The two phrases in this first sentence we must construe are: "deliberate act" and "specifically intended an injury."

The Legislature's use of the phrase "deliberate act" may indicate either that the employer must have deliberated about the act[7] or that the act must be one of commission rather than omission. Although not free from doubt, we construe the phrase "deliberate act," to encompass both commissions and omissions. In most of the cases in which employees allege the intentional tort exception, the injury does not result from traditional examples of intentional torts, such as a battery. Rather, as the facts in these two cases illustrate, it is more common to have a situation in which an omission leads to injury at the workplace, such as a failure to remedy a dangerous condition. The legislative history indicates that employer omissions may constitute the "act" necessary to establish an intentional tort. Senator Cherry cited several cases that

---

[7] For example, if an employer punches his employee, the punch could be considered deliberate; yet if the employer suffers an involuntary muscle spasm that causes his arm to make contact with his employee, the spasm cannot be considered deliberate.

indicate that events other than a traditional battery may fulfill the "deliberate act" requirement. Most telling, though, is that the facts in *Beauchamp* alleged an act of omission, failure to prevent exposure to Agent Orange, yet the legislative reaction to that decision did not make the traditional distinction in tort law between commissions and omissions, and only allows recovery for commissions. The interpretation is also supported by the second sentence in which the employer is deemed to have the requisite intent from the failure to act in certain circumstances. Therefore, we construe the phrase "deliberate act" to include a situation in which an employer consciously fails to act.

The more difficult issue is what the Legislature intended by the phrase "specifically intended an injury." The commonly accepted meaning of the word "intent" includes a state of mind in which the actor is substantially certain that his act will produce a certain result. For instance, Prosser states that the commonly accepted meaning of "intent" has three basic elements:

> (1) it is a state of mind (2) about consequences of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are *substantially certain* to result from the act. [Prosser & Keeton, Torts (5th ed), § 8, p 34 (emphasis added).]

Prosser also states:

> [T]he mere knowledge and appreciation of a risk—something short of *substantial certainty*—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may

be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. [*Id.*, § 8, p 36 (emphasis added).]

Similarly, the Restatement uses the word "intent" "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are *substantially certain* to result from it." 1 Restatement Torts, 2d, § 8A, p 15 (emphasis added).

It would be an absurd construction, however, to conclude that the Legislature meant to define "intended" to include when the actor was "substantially certain" of the consequences of his acts. That the Legislature intended a meaning other than the "substantially certain" language of Prosser and the Restatement is clear from the fact that the amendment was intended to reject *Beauchamp* and from the use of the word "certain," not "substantially certain," in the second sentence. Whatever else the Legislature intended, we are confident it intended to prohibit tort liability if an employer is only substantially certain that injury will result from his acts. Therefore, we conclude that the phrase "specifically intended an injury" means that the employer must have had in mind a purpose to bring about given consequences.

Yet another problem arises in construing this phrase because the two employers are corporations. A corporation is vicariously liable only where "some employee . . . act[s] with the requisite intent to impute an intentional tort to a corporation." *Adams v Nat'l Bank of Detroit*, 444 Mich 329, 343, 368-369; 508 NW2d 464 (1993) (BOYLE, J., concurring in part and dissenting in part, and BRICKLEY, J.). Therefore when the employer is a corporation, a particular employee

must possess the requisite state of mind in order to prove an intentional tort. The intent requirement will not be fulfilled by presenting "disconnected facts possessed by various employees or agents of that corporation . . . ." 444 Mich 369.

Thus, the construction of "specifically intended an injury" that effects the intent of the Legislature as manifested by the legislative history is that in acting or failing to act, the employer must have determined to injure the employee; in other words, he must have had the particular purpose of inflicting an injury upon his employee.[8]

Construing the entire first sentence according to the Legislature's intent, to state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee.

The most difficult problem of interpretation is ascertaining the intent of the Legislature under the second sentence defining the intentional tort exception. That sentence reads: "An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1); MSA 17.237(131)(1). The structure of the intentional tort exception indicates that the first sentence sets forth the exception's general requirements: the employer must engage in a deliberate act (commission or omission) with a specific intent to injure.

---

[8] There has been a debate with regard to whether the employer must have intended *an* injury or *the* injury under the intentional tort exception. While an important question, we decline to address the issue because it has not been raised or briefed by the parties. We would point out, however, that the language of the statute says "an" injury.

Reading the second sentence in context, it may present one method of proving the specific intent requirement of the first sentence, or it may simply have been intended to restate the requirements of the first sentence. Whatever else it means, however, it is strong evidence that the Legislature did not confine liability to those situations that are true intentional torts. We read the second sentence as a legislative recognition of a limited class of cases in which liability is possible despite the absence of a classic intentional tort and as a means of inferring an employer's intent to injure from the surrounding circumstances in those cases. In other words, the second sentence will be employed when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence. It is a substitute means of proving the intent to injure element of the first sentence. The three phrases in this sentence that we must construe are: "actual knowledge," "certain to occur," and "willfully disregarded."

A

ACTUAL KNOWLEDGE

Because the Legislature was careful to use the term "actual knowledge," and not the less specific word "knowledge," we determine that the Legislature meant that constructive, implied, or imputed knowledge is not enough. Nor is it sufficient to allege that the employer should have known, or had reason to believe, that injury was certain to occur. See *United States v Ed Lusk Construction Co*, 504 F2d 328, 331 (CA 10, 1974); *Roberts Construction Co v Brown*, 272 Ala 440, 442; 131 So 2d 710 (1961). A plaintiff may establish a corporate employer's actual knowledge by

showing that a supervisory or managerial employee
had actual knowledge that an injury would follow
from what the employer deliberately did or did not
do.

B

INJURY CERTAIN TO OCCUR

Once we conclude that the employer must have
actual knowledge that an injury would occur, the
question becomes when does a dangerous condition
rise to the level of "certain to occur"? According to
one court, "certain" means sure and inevitable. *Min-
gachos v CBS, Inc*, 196 Conn 91, 102, n 12; 491 A2d
368 (1985). The legislative history requires us to
interpret "certain to occur" as setting forth an
extremely high standard. When an injury is "certain"
to occur, no doubt exists with regard to whether it
will occur. Thus, the laws of probability, which set
forth the odds that something will occur, play no part
in determining the certainty of injury. Consequently,
scientific proof that, for example, one out of ten per-
sons will be injured if exposed to a particular risk, is
insufficient to prove certainty.[9] Along similar lines,
just because something has happened before on occa-
sion does not mean that it is certain to occur again.
Likewise, just because something has never happened
before is not proof that it is not certain to occur.

Moreover, conclusory statements by experts are
insufficient to allege the certainty of injury contem-
plated by the Legislature. In *Kielwein v Gulf Nuclear*,

---

[9] Moreover, allowing such scientific data to prove certainty of injury
would create a slippery slope—what if the data says 1 in 100? 1 in 10,000?

*Inc*, 783 SW2d 746, 747-748 (Tex App, 1990), the plaintiff's expert's affidavit merely said:

> It is my opinion that the conduct of [the defendant] in operating it's (sic) facility and failing to take appropriate measures to protect Plaintiff during the clean-up operation of the radiation spill was substantially certain to cause [the plaintiff's] injury and was substantially certain to result in radioactive contamination of [the plaintiff] and his fellow workers. It is impossible for [the defendant] to have been unaware that exposing Plaintiff to such risks without any protection whatsoever would be substantially certain to cause [the plaintiff's injuries].

The Texas court found that this affidavit was sufficient to create a genuine issue of material fact under its "substantial certainty" test. Under the Michigan statute, however, even if the expert opined that the injury was "certain to occur," and not merely "substantially certain to occur," this affidavit would be insufficient. It merely parrots the language of the legal test and gives no scientific or factual support for its conclusion.

One case which is directly on point is *Gulden v Crown Zellerbach Corp*, 890 F2d 195 (CA 9, 1989). In *Gulden*, the defendant's plant was contaminated with toxic levels of polychlorinated biphenyls (PCBs). After hazardous waste specialists were unsuccessful in reducing the level of PCBs on the plant floor, the defendant ordered the plaintiffs to scrub the floor on their hands and knees, with no protective clothing. This assignment continued for five days, during which time the plaintiffs' clothing was soaked with PCBs. The court held that under Oregon's narrow intentional tort

exception,[10] the plaintiffs' complaint withstood summary judgment. The court found that the injury in question was the exposure to the PCBs itself, because the level of toxicity was sufficient to produce a body level of PCBs of six to ten times higher than normal and to trigger serious health concerns. The court then held that the injury was certain to occur. It reasoned that the defendant was aware that contact with the PCBs would injure the plaintiffs, yet deliberately ordered them to perform their task "in a manner requiring them to initiate and maintain contact with the PCBs." 890 F2d 197. These facts would constitute allegations of certainty of injury under the Michigan statute.[11]

A further question under the certainty requirement, closely related to the actual-knowledge requirement, is the level of awareness an employer must possess: is it enough that the employer know that a dangerous condition exists, or must the employer be aware that injury is certain to occur from what the actor does? We find the latter interpretation the proper one. For example, in *Glockzin v Nortek, Inc*, 815 F Supp 1050

[10] Oregon's statute permits a civil tort claim to be filed "[i]f injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death . . . ." [Or Rev Stat 656.156(2).]

[11] But see *Schefsky v The Evening News Ass'n*, 169 Mich App 223; 425 NW2d 768 (1988). The plaintiff alleged that he sustained chemical-induced asthma from inhaling toxic fumes while at work. He contended that his employer knew the solvents emitted dangerous fumes, especially when used in a confined area, but withheld this information from him by removing the solvents from their original containers, which had warning labels on them. The Court of Appeals upheld the grant of summary disposition for the defendant, contending that the plaintiff failed to plead that the defendant had actual knowledge that an injury such as asthma was certain to occur from exposure to the fumes. Importantly, the Court also pointed out that the plaintiff had conceded that the "[d]efendant . . . may not have specifically intended plaintiff's illness." 169 Mich App 228.

(WD Mich, 1992), the plaintiff's decedent died when electrocuted by an air-conditioning testing device. The court, applying the standard set forth in 1987 PA 28, held that the injury was not certain to occur. It reasoned:

> Though a number of employees had received shocks from the apparatus, there is no evidence that anyone, except for the decedent, suffered a similar electrocution. . . . Of course, these minor incidents occurred over a period where there was a continuous, daily use of the apparatus at a busy manufacturing assembly line. Given these circumstances then, an electrocution could not have been envisioned as a certain danger. [815 F Supp 1053.]

The court further reasoned that the employer's attempts to repair the device, and its warnings to its employees of the possibility of shocks, even further removed the electrocution from the realm of "certainty."

Despite the very high threshold required to deem an injury "certain to occur," some situations constitute examples of certain injury. For example, Professor Larson, in his treatise on worker's compensation, agrees that the *Film Recovery* case discussed in *Beauchamp*, 427 Mich 23, constitutes an intentional tort.[12] He explains:

---

[12] The facts of the case, as set forth by *Beauchamp*, are as follows,

> Film Recovery Systems went into the business of recovering silver from film negatives. This was done by placing the negatives into vats of cyanide. Hydrogen cyanide gas would bubble up from the vats and there was inadequate ventilation. The employer knew about the dangers. The labels on the chemicals being used contained adequate warnings; as a result, the employer hired only employees who could not speak or read English. The workers complained about the fumes daily. In 1981, an inspector had warned that the operation had outgrown the plant. The employer's response was to move the executive offices while tripling the size

[T]he fumes . . . were continuously operative, and the
employer knew it. . . . The exposure to fumes *did* in fact
occur. The only possible "unknown" might have been the
effect of inhaling the fumes, but this unknown was removed
by the plain warning on the package. The hiring of only
workers who could not read warning labels confirms that
the employer wanted those employees to continue to inhale
these and suffer these known consequences. A court could
well say that this amounted to intending the injury. [2A Lar-
son, Workmen's Compensation, § 68.15(e), pp 13-105 to 13-
106.]

We agree with Professor Larson's reasoning. When an
employer subjects an employee to a continuously
operative dangerous condition that it knows will
cause an injury, yet refrains from informing the
employee about the dangerous condition so that he is
unable to take steps to keep from being injured, a
factfinder may conclude that the employer had
knowledge that an injury is certain to occur.

C

WILLFULLY DISREGARDS

Finally, the term "willfully disregard[s]" must be
construed. The word "willful" is a term denoting a
certain state of mind. As established above, the pur-
pose of the second sentence is to present one method
of proving the specific intent requirement of the first
sentence. Because the purpose of the entire second
sentence is to establish the employer's intent, we find
that the use of the term "willfully" in the second sen-

---

of the operations. Eventually one worker died and several others
were seriously injured because of hydrogen cyanide poisoning. The
corporate officers were convicted of involuntary manslaughter.
[427 Mich 23-24.]

tence is intended to underscore that the employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm. An employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur.

D

### INFERENCE OF INTENT

In short, under the second sentence, the Legislature has permitted the employer's state of mind to be inferred from its actions when there is no direct evidence of the employer's intent to injure. The use of such an inference finds support in criminal law[13] and Michigan's insurance cases. In the insurance context, when an insured files a claim for coverage under a policy excluding "expected and intended" injury, the insured must prove that the injury was neither expected nor intended. If the facts are such that a reasonable person would not be heard to say an injury was not expected or intended, "an insured's claim that no injury was expected or intended 'flies in the face of all reason, common sense and experience . . . .' " *ARCO Industries v American Motorists Ins Co*, 448 Mich 395, 429; 531 NW2d 168 (1995) (opinion of BOYLE, J.) (citations omitted). Likewise, if an employer disregards actual knowledge that an injury is certain to occur, the law will not permit him to claim he did not intend to injure. In such a situation, the Legislature determined that the employer will be deemed to possess the specific intent to injure.

---

[13] The classic use of inferred intent is the actor who fires a bullet into a dense crowd.

Thus, in order to effect the intent of the Legislature, we would hold that the second sentence of the intentional tort exception is one means of proving the specific intent to injure element of the first sentence. Under the second sentence, an employer may be deemed to have intended to injure if he has actual knowledge that an injury is certain to occur, yet disregards that knowledge.

If we read both sentences of the intentional tort exception together, it becomes evident that an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent. The second sentence then allows the employer's intent to injure to be inferred if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge.[14] The applications that follow are our attempt to give effect to the expressions of legislative intent contained in the statute: an intent to create a rigorous threshold for a claim of intentional tort, and an intent that the threshold created not be so rigorous as to preclude all claims of intentional torts.

APPLICATION

I

*TRAVIS*

The trial court granted defendant Greenville Wire's motion for summary disposition under MCR 2.116(C)(10), and the Court of Appeals reversed. In

---

[14] The second sentence will be applied most often to workplace injuries, since those injuries are not easily examined under a traditional intentional tort analysis.

reviewing this ruling, we examine all pleadings, deposition testimony, and other documentary evidence that were before the trial court and construe all facts in a light most favorable to the plaintiff.

Plaintiff Travis used the method presented in the second sentence to establish the employer's intent to injure.[15] The second sentence allows an inference that the employer intended to injure "if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1); MSA 17.237(131)(1).

First, we will examine whether the evidence, viewed in a light most favorable to plaintiff, establishes that her employer had "actual knowledge." Defendant, through its supervisory employee Clarke had actual knowledge that the press was malfunctioning. On the morning of plaintiff's accident, Rodney King, the toolroom supervisor, informed Clarke that the machine was double cycling and should be shut down in order to repair it. Clarke refused to shut down the machine. Because a supervisory employee was made aware of the malfunctioning press, we conclude plaintiff has established the actual-knowledge prong.

The next requirement under the second sentence is that a supervisory employee must have had actual

---

[15] The continuousness consideration is relevant because plaintiff cannot meet the extremely high barrier to stating a claim of an intentional tort imposed by the first sentence. Thus, contrary to Justice LEVIN's observations, we do not conclude that an injury resulting from a single highly risky task could not, under appropriate circumstances, form the basis of a claim for relief. The indisputable focus of the legislation, however, is not the riskiness of the task, but whether the employer intended the injury. Absent factual allegations that meet the threshold of the first sentence, the continuation of risk with knowledge of its dangerous characteristics thus allows a circumstantial inference of intent sufficient to state a claim.

knowledge that an injury was "certain to occur." Although Clarke had actual knowledge that the press was malfunctioning, he did not have knowledge that an injury was certain to occur. Plaintiff argues that because she was a novice press operator and was not informed that the press was double cycling an injury was certain to result from the malfunctioning press. It is true that concealing a known danger from an employee who has no independent knowledge of the danger may be evidence of an intent to injure. However, in this case, unlike *Film Recovery, supra*, plaintiff was not required to confront a continually operating dangerous condition. The press double cycled only intermittently. Further evidence that the injury was not certain to occur is that Clarke was willing to operate the press himself. Additionally, Clarke had adjusted the machine just before assigning plaintiff to it. In the past, such adjustments would allow the press to run for at least one or two days without double cycling. Moreover, the press cycled so slowly that no one had ever been injured when the press double cycled previously. All prior operators were able to withdraw their hands in time. We find that an injury was not certain to occur because plaintiff was not required to confront a continuously operating dangerous condition.

Even assuming Clarke knew an injury was certain to occur, plaintiff is unable to prove that Clarke "willfully disregarded" that information. Although King informed Clarke the press should be broken down to be properly repaired, in Clarke's experience, adjusting the exterior of the machine allowed the machine to run without double cycling for at least one or two days. Clarke adjusted the exterior of the press, and

thereafter felt comfortable operating the press himself. Unlike a situation in which an employer orders an employee to confront a continuously operating danger while concealing the danger from the employee, the evidence does not suggest that Clarke disregarded a continuously operative dangerous condition that would lead to certain injury.

In conclusion, plaintiff Travis is unable to establish that her employer possessed the specific intent to injure her. Although her employer may have negligently permitted an unsafe work environment to exist, no intentional tort was committed. Plaintiff's sole remedy should be under the WDCA.

II

*GOLEC*

Defendants brought a motion for summary disposition under MCR 2.116(C)(10). Under this court rule, a trial court must examine all the documentary evidence in a light most favorable to the nonmoving party and determine as a matter of law whether there exists a genuine issue of material fact. The trial court dismissed this case, finding the facts alleged in plaintiff's complaint to be insufficient as a matter of law to constitute an intentional tort. Therefore, the court concluded that plaintiff's sole remedy was the WDCA. The court specifically stated that, on the basis of this conclusion, it "need not address whether plaintiff can demonstrate sufficient evidentiary support for its allegations of intentional tort pursuant to MCR 2.116(C)(10) and MCR 2.116(G)(4)." The Court of Appeals likewise examined only the pleadings in its opinion. However, both parties relied on matters outside the pleadings to argue the motion, and the

trial court used deposition testimony in its opinion and order granting defendant's motion. Accordingly, although both lower courts considered the issue under MCR 2.116(C)(8), we will treat this motion as if it had been granted under MCR 2.116(C)(10) and examine both the pleadings and the documentary evidence. See *Glittenberg v Doughboy Recreational Industries, Inc*, 436 Mich 673, 681; 462 NW2d 348 (1990) (opinion of GRIFFIN, J.); *Velmer v Baraga Area Schools*, 430 Mich 385, 389; 424 NW2d 770 (1988); *Huff v Ford Motor Co*, 127 Mich App 287, 293; 338 NW2d 387 (1983).

Accepting the facts to be as alleged by plaintiff, we determine that proper application of the rules regarding summary disposition requires the conclusion that plaintiff established a genuine issue of material fact with respect to whether defendant Metal Exchange committed an intentional tort. If the facts as alleged by plaintiff are proven at trial, they would support a finding that his employer possessed the requisite intent to injure. Focusing first on the level of defendant's knowledge, we find that plaintiff established a genuine issue of material fact regarding whether his employer had actual knowledge that an injury would occur. The first inquiry is whether defendant was aware of the cause of the explosion. Plaintiff contends the cause may have been the aerosol containers, may have been the water, or may have been a combination of the two factors. Plaintiff presents deposition testimony of defendants Mazur, Meyer, and Szybowicz in which they acknowledge that closed aerosol cans and water could cause explosions and that both were present in the scrap loaded by plaintiff. If plaintiff definitively proves at trial that water,

aerosol cans, or a combination of the two created the dangerous condition that caused the explosion, and that defendant knew this condition could lead to an explosion, then plaintiff will have established actual knowledge. On the other hand, defendant correctly observes that plaintiff has not ruled out that the cause may have been plaintiff's loading technique or a defect in the furnace, which under plaintiff's theory of the case would not be within the scope of defendant's actual knowledge. Under defendant's theory, an argument may be made that, unlike *Film Recovery Systems*, the cause of the injury has not been identified in a manner in which it can be established that the employer knew of the presence of that condition, and knew that exposure to it would cause injury.[16] Under the present procedural posture of the case, however, we cannot rule out the possibility that plaintiff's theory will prevail at trial. Accepting plaintiff's facts as true, we find that a genuine issue of material fact exists with respect to whether defendant had actual knowledge of the condition that caused plaintiff's injury.

Likewise, the evidence conflicts with regard to whether the injury was "certain" to occur. Starting with the premise that either the aerosol cans or the water caused the explosion, defendant contends that plaintiff was instructed to sort out all the aerosol cans before loading the scrap into the furnace. Defendant also presented deposition testimony that plaintiff was instructed regarding a method of loading wet scrap that would avoid an explosion. If the finder

---

[16] See Professor Larson's discussion of *Film Recovery Systems*, set forth *ante* at 177-178.

of fact determines that the events transpired as set forth by defendant, then defendant must prevail. On the other hand, plaintiff contends that he was told to load all the scrap, which he understood to include the aerosol cans. Plaintiff testified in his deposition that he was loading the wet scrap in the way in which he was trained, but that the explosion occurred anyway. In addition, defendant contends that if an injury were certain to occur, the large explosion would have occurred earlier in plaintiff's shift or, at the very least, the smaller explosions would have been far more numerous. Defendant misconstrues plaintiff's argument, however. Plaintiff does not contend that every load of scrap would have exploded, but that every load of scrap had the potential to explode because each load could have contained a closed aerosol can or water. If the facts as alleged by plaintiff are established at trial, then plaintiff has proved the existence of a continually operative dangerous condition. Accordingly, we conclude that a genuine issue of material fact is presented regarding whether the injury was certain to occur.

Finally, the facts as alleged by plaintiff create a genuine issue of material fact with respect to whether his employer wilfully disregarded that an injury was certain to occur. Defendant argues that while it may have been negligent to require plaintiff to load wet scrap containing aerosol cans, defendant did not wilfully disregard a certain injury because no explosion of this magnitude had occurred previously. While this is true, plaintiff has presented evidence that, despite knowledge of the earlier explosion, defendant failed to remedy the condition that caused it. In his deposition, defendant Mazur stated that after the ear-

lier explosion, he contacted his supervisor, defendant Rziemkowski, and informed him of the explosion and that the scrap was wet. In response, Rziemkowski ordered plaintiff back to work. Rziemkowski did not tell Mazur to inspect the furnace, reinstruct plaintiff regarding loading techniques, or make any other investigation. On the other hand, defendant Rziemkowski, in his deposition, testified that he did not remember receiving a telephone call from Mazur on the night of the explosion. At most, this testimony creates a question of fact with regard to whether Rziemkowski ordered plaintiff back to work in the face of a condition that had already led to one, albeit minor, explosion. Consequently, whether Rziemkowski disregarded knowledge of a certain injury must be resolved by the trier of fact.

In conclusion, the rules we must apply when a case is before us on a motion for summary disposition constrain us to hold that a genuine issue of material fact exists with respect to whether plaintiff's employer disregarded actual knowledge that an injury was certain to occur. Consequently, we would remand plaintiff Golec's case for further proceedings consistent with this opinion.

### III

#### CONCLUSION

Plaintiff Travis has failed to set forth facts sufficient to create a question for the jury with regard to whether defendants wilfully disregarded actual knowledge that an injury was certain to occur. At most, she has established that her employer's negligence or recklessness led to her injury, and her sole remedy is under the WDCA. The facts alleged and sup-

ported by deposition testimony in plaintiff Golec's case, however, create the existence of a genuine issue of material fact with respect to whether his employer may be deemed to have intended to injure plaintiff. Plaintiff has set forth sufficient facts that, if construed in a light most favorable to him, support a finding that his employer had actual knowledge that an injury was certain to occur, yet disregarded that knowledge.

ISSUE II

Defendants in both cases also contend that whether an intentional tort has been committed is a question of law for the trial court. Plaintiffs argue in response that while the legal issue is for the court, it must rule while viewing the facts in a light most favorable to the plaintiff, because it is for the jury to determine whether the facts are as the plaintiff alleges. Subsection 131(1) states, "[t]he issue of whether an act was an intentional tort shall be a question of law for the court."

As our prior analysis foreshadows, we interpret this sentence consistently with the historical division of duties between the court and the jury. As stated by the Court of Appeals in *McNees v Cedar Springs Stamping Co*, 184 Mich App 101, 104; 457 NW2d 68 (1990):

> [T]he issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question. If the latter issue were for the court, all jury trials in this type of case would have been eliminated, and we find that this was not the intention of the Legislature.

The legislative history gives no indication that this sentence was meant to be construed in any other way.

### ISSUE III

Defendant Metal Exchange Corporation presents a third issue, whether the plaintiff may maintain his intentional tort claim against the individual coemployees.

It is clear that the exclusive remedy for coemployee *negligence* is the WDCA. *Nichol v Billot*, 406 Mich 284, 292; 279 NW2d 761 (1979); *Sergeant v Kennedy*, 352 Mich 494; 90 NW2d 447 (1958). The defendants claim that the remedy for coemployee intentional torts should also lie exclusively in the WDCA.

Under subsection 827(1) of the WDCA, MCL 418.827(1); MSA 17.237(827)(1),[17] an injured employee who has accepted worker's compensation benefits may only sue someone other than a "natural person in the same employ or the employer to pay damages in respect thereof . . . ." Section 827 does not distinguish between injuries caused intentionally and those caused negligently. Before *Beauchamp*, this Court held that this section barred all civil suits against employees otherwise compensable under the WDCA,

---

[17] Section 827(1) reads in part,

> Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee . . . may also proceed to enforce the liability of the third party for damages in accordance with this section.

including intentional torts. *Nichol, supra*; *Crilly v Ballou*, 353 Mich 303, 327; 91 NW2d 493 (1958); *Sergeant, supra*.

Since *Beauchamp*, however, these cases have been called into question. While the Legislature disagreed with the test set forth in *Beauchamp*, its fundamental holding—that the WDCA was designed to compensate for accidental, not intentional, injuries by employers—has not been disturbed. The question then becomes, is intentional conduct by a coemployee likewise outside the scope of the act? In dicta, *Beauchamp* indicates that the intentional tort provision in § 131 would not affect an intentional tort action against a coemployee. 427 Mich 15. One Court of Appeals panel has indicated that because intentional torts committed by an employer are excluded from the worker's compensation system under § 131, it would be anomalous to hold that § 827 barred suits against coemployees alleging intentional torts. *Whaley v McClain*, 158 Mich App 533, 538; 405 NW2d 187 (1987).

We agree. Reading § 131 in conjunction with § 827, the only reasonable conclusion is that a coemployee may be sued in tort for the commission of an intentional tort. Section 131, as amended by 1987 PA 28, indicates that intentional torts are excluded from the exclusive remedy provisions of the WDCA. Accordingly, for purposes of § 827, an intentional tort is not an "injury for which compensation is payable under this act." Because intentional torts fall outside the WDCA, an individual defendant who possesses the intent to injure and whose deliberate act or omission causes injury may be prosecuted under ordinary tort principles. We emphasize, however, that the holding of *Ser-*

*geant* and *Nichol* remains sound after *Beauchamp*. The sole remedy for injuries attributable to coemployee *negligence* should lie in the WDCA.

In this case, plaintiff Golec presented evidence that defendant Rziemkowski ordered plaintiff back to work in the face of a known danger. Thus, the trier of fact could conclude that defendant Rziemkowski personally possessed the intent to injure plaintiff, and engaged in a deliberate omission in order to carry out this intent. If so, then plaintiff's intentional tort claim against defendant Rziemkowski individually may succeed. None of the other individual defendants named in plaintiff's complaint, however, could have possessed the requisite intent. None except Mazur were aware of the occurrences of the night in question until after the fact, and Mazur was merely carrying out Rziemkowski's orders when he sent plaintiff back to work. Accordingly, plaintiff's intentional tort claim against individual defendant Rziemkowski only should be maintained.

### CONCLUSION

We would reverse the opinion of the Court of Appeals in *Travis*, and reinstate the trial court's order granting summary disposition for defendant. We would affirm the Court of Appeals opinion in *Golec* with regard to defendants Metal Exchange and Rziemkowski, and would remand to the trial court for further proceedings consistent with this opinion.

MALLETT, J., concurred with BOYLE, J.

RILEY, J. (*concurring in part and dissenting in part*). I agree with the test established by the lead opinion for finding an intentional tort. I also concur

with its conclusion that plaintiff Travis did not meet this test.[1] I, however, disagree with the conclusion that summary judgment was not properly granted in *Golec*. Accepting the facts pleaded by Golec as true, I do not believe that they demonstrate an intentional tort. The employer simply did not have actual knowledge that an injury was certain to occur. Consequently, I would affirm the trial court's granting of summary disposition in this matter.

BRICKLEY, C.J., and WEAVER, J., concurred with RILEY, J.

LEVIN, J. (*concurring in Golec; dissenting in Travis*). The majority holds that the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act applies when an employer subjects an employee to a continuous risk of danger, and applies that construction to preclude this action in tort and to limit Travis to worker's compensation benefits. Because the majority's ruling is contrary to the result intended by the Legislature, I would affirm the decision of the Court of Appeals.

I

Section 131(1) of the worker's compensation act provides:

The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional

---

[1]    In conclusion, plaintiff Travis is unable to establish that her employer possessed the specific intent to injure her. Although her employer may have negligently permitted an unsafe work environment to exist, no intentional tort was committed. [*Ante* at 183.]

tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law. [MCL 418.131(1); MSA 17.237(131)(1).]

My principal disagreement with the majority concerns its construction and application of the term "certain to occur."

Although we agree that subsection 131(1) does not require a one hundred percent probability that an action will cause a result to deem an injury intentional, the majority employs an incomplete risk analysis, draws selective guidance from precedents, and views the facts improperly in denying these plaintiffs the now legislatively mandated remedy.

A

The language of the intentional tort exception currently under scrutiny was enacted in 1987 PA 28. That language was clearly a contraction of the broader range of conduct for which an employee could recover damages from an employer under this Court's decision in *Beauchamp v Dow Chemical Co*, 427 Mich 1; 398 NW2d 882 (1986). As the lead opinion observes, the language currently at issue was a compromise between the two houses of the Legislature. The Senate had pressed for a version that would have required the employer to have specifically intended the injury to occur. The House version would have implied intent where the employer knew

the injury was "likely to occur." The final result, by all accounts, was somewhere in the middle. *Calladine v Dana Corp*, 679 F Supp 700, 703 (ED Mich, 1988); Senate Fiscal Agency Analysis, SB 67 (Third Analysis), May 26, 1987.

The lead opinion relies on the legislative record respecting the passage of 1987 PA 28 for assistance in determining the exception's contours. Although Senator Dillingham stated that the language was intended to prevent recovery when the employer was "less than 100 percent" certain, Senator Cherry stated:

> The change in the standard although narrowing the substantial certainty test does not preclude the specific cases which the Supreme Court indicated were actionable under the *Beauchamp* decision. [1987 Journal of the Senate 1235.]

Those three cases were *People v O'Neil*, unpublished opinion of the Cook County, Illinois, Circuit Court, issued June 14, 1985 (Docket Nos. 83-11091, 84-5064), better known as the *Film Recovery* case, *Serna v Statewide Contractors, Inc*, 6 Ariz App 12; 429 P2d 504 (1967), and *Barnes v Double Seal Glass Co*, 129 Mich App 66; 341 NW2d 812 (1983). The lead opinion establishes the *Film Recovery* case as the line beyond which an employer may not tread. I agree. My disagreement with the lead opinion springs from its failure to include or consider the other two cases cited alongside the *Film Recovery* case by Senator Cherry and how they affect our interpretation of the intentional tort exception.

As the lead opinion implicitly recognizes, absolute unavoidability of the consequences cannot be the standard for determining when an event is "certain to occur." Even the deliberate firing of a gun directly at

an employee is not certain to cause injury if the employer's aim is untrue. Yet, if the bullet should find its mark, no court would hesitate to find the injury "certain to occur" despite its evitability.

This principle is made clear by the *Film Recovery* case, which all seem to agree presents a circumstance meriting tort recovery. The lead opinion relies on *Film Recovery* to set its standard for certainty, yet it is clear from the facts of that case that an injury was not certain to occur. The plaintiff was not the only worker performing the same task, and he was not injured on his first day on the job. If working with the chemical carried a one hundred percent probability of injury, the bodies would have piled up, and done so much sooner.

Properly understood, the term "certain" in the statute must mean some unacceptably high, but not complete, risk. It is higher than our previous formulation, "substantial certainty." Similarly, it represents greater danger than the risk necessary to support negligence or even gross negligence. Nonetheless, it cannot mean a one hundred percent likelihood that an injury will occur, because such certainty does not, as a practical matter, exist in this world.

B

The lead opinion's error begins when it vouchsafes the "laws of probability" as having no bearing on the resolution of this issue. One obvious and applicable canon of those clear but disfavored laws is that a single exposure to a great risk can be just as "certain" to cause an injury as repeated exposures to lesser risks. Thus, an employee who must play one game of Russian roulette with four bullets in a six-shot revolver is

no better or worse off than an employee who must play six games with the same weapon loaded with only one bullet, spinning the chamber after every game. Notably, neither employee is exposed to a one hundred percent chance of injury.

The precedents at issue in this case reflect the same combination of risks. The plaintiffs in *Serna* and *Barnes* faced a single, highly risky task: digging in an unbuttressed ditch and pushing an overloaded cart of glass. The plaintiff in *Film Recovery* faced a slighter risk, but faced it continuously and over a long period of time. As this Court implied in *Beauchamp*, all these cases present injuries resulting from equally unacceptable risks.

The lead opinion, however, while repeatedly referencing *Film Recovery*, does not discuss *Serna* or *Barnes* although they spring from precisely the same judicial and legislative sources. Instead, the lead opinion adds a reference to *Gulden v Crown Zellerbach Corp*, 890 F2d 195 (CA 9, 1989), a case it says would withstand the "certain to occur" requirement. *Ante* at 175-176. In *Gulden*, the plaintiffs' employer ordered them to work in contact with toxic levels of PCBs (polychlorinated biphenyls), without any protective clothing, for a period of five days, while concealing the danger from them. 890 F2d 197.

The result of this selective examination of precedent is to narrow the conception of risk relevant to the interpretation of this statute. In all the cases favored by the lead opinion, the risks encountered by an employee are lower level, but continuous dangers. The cases that vanish from its analysis, *Serna* and

*Barnes*, both involve isolated but extremely dangerous activities.

This incomplete description of the relevant cases injects an illogical and unfounded "continuousness" criteria into the lead opinion's formulation:

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur. [*Ante* at 178.][1]

After so limiting the scope of the inquiry, the lead opinion readily distinguishes *Travis*. *Travis*, it argues, should not recover because the risk that her hand would be mangled by a defective press was only occasional, not "continuously operating." Although the lead opinion may have allowed an action in *Serna*, where the plaintiffs were twice put in jeopardy of being buried alive, it would appear to deny recov-

---

[1] The lead opinion maintains:

> [C]ontrary to Justice LEVIN's observations, we do not conclude that an injury resulting from a single highly risky task could not, under appropriate circumstances, form the basis of a claim for relief. The indisputable focus of the legislation, however, is not the riskiness of the task, but whether the employer intended the injury. [*Ante* at 181, n 15.]

To the extent this statement implies that the lead opinion agrees with the analysis of risk endorsed by this opinion, I meet it with enthusiasm.

The focus of the legislation is clearly "whether the employer intended the injury," but the legislation also allows evidence that an employer knowingly subjected an employee to a great risk to act as a proxy for actual intent, and it has in no way indicated it intends to limit that proxy in the way the lead opinion today may be seen as implying. Quite the contrary, the legislative intent plainly embraces any high risk, be it the product of an isolated or continuous exposure to danger.

ery to the plaintiff in *Barnes*, because he only faced the risk of having his skull sliced off by plate glass once.

Subsection 131(1) is a limitation on the risks that employers can subject their employees to, and therefore whether an injury is "certain to occur" for purposes of the statute is obviously a question of probabilities. By randomly limiting the dangers covered by the intentional tort exception to continuous risks, the lead opinion improperly limits the appropriate and logical extent of that provision. The rule announced today will directly affect those workers who face grave, if intermittent, dangers; workers who are distinguished only by the type, rather than the magnitude, of the risk they endure. The first of those workers is Travis.

II

When all the guidance available from the Legislature and judiciary is considered, it is clear that the dangers the defendant exposed Travis to are well within the range of risk contemplated by the statute.

A

The lead opinion has set forth a thorough and convincing description of the danger Golec was subjected to. I continue briefly only to underscore the similarity of Golec's case to the *Film Recovery* case. In *Film Recovery*, the danger resulted from immersing silver in a cyanide solution. In *Golec*, the danger was caused by placing an aerosol can or wet scrap into a vat of molten metal. In both cases, a reaction could be predicted with scientific certainty. In both cases, that reaction posed a serious threat to the health of work-

ers nearby. In both cases, the employer knew of the risk and deliberately failed to protect the worker from it. In both cases, it appears the employer sheltered the employee from knowledge of the danger. In neither was harm one hundred percent certain, but if a reasonable person had to choose between a few moments exposure to cyanide gas or to molten metal, I doubt any would choose either.

If Golec were to prove at trial that his employer knew that aerosol cans or wet scrap were included in the material Golec was instructed to place in the molten metal, and if Golec were to further prove that the employer understood the results of this combination, Golec then would be entitled to submission of the issue whether an intentional tort was committed to a jury. This case was disposed of on summary disposition; I join in remanding this case for trial.

Golec's recovery should not be limited because such an explosion had not occurred before on the theory that no rational owner would wilfully bring such damage upon its (insured) plant. An employer can not be excused for exposing his employee to an unacceptably high risk of injury simply because he himself underestimated the ultimate damage that occurred. The relevant inquiry is whether the level of risk that the defendant did know about was excessive (a question for the jury), not whether he anticipated the full potential for disaster.

B

The lead opinion carefully details the circumstances leading to the injury suffered by Travis, concluding it was not "certain" to occur. The lead opinion focuses on its observation that "plaintiff was not

required to confront a continually operating danger-
ous condition. The press double cycled only intermit-
tently." *Ante* at 182.

Travis, however, had operated the machine for
some time before the accident, each repetition expos-
ing her to the risk that finally manifested itself. More
importantly, the lead opinion confuses a continual
danger that only occasionally manifests itself in an
injury with an intermittent danger. By the lead opin-
ion's logic, a gun used in a game of Russian roulette
fires "only intermittently," somehow reducing the
peril of the game.

The most hollow evidence marshaled by the lead
opinion was the supervisor's willingness "to operate
the press himself."[2] The lead opinion relies on this
evidence, even though it acknowledges that Travis did
not know the machine was malfunctioning while the
supervisor had actual knowledge of that risk.

Having in mind the particular ailment afflicting this
machine, it should be clear that knowledge of its
potential malfunction would make operating it safely
considerably more likely. Similarly, the lead opinion's
reliance on evidence that "no one had ever been
injured when the press double cycled previously" is
misplaced if none of the previous operators were
working with the same blindfold placed on Travis.
Indeed, had the employer informed Travis of the
problem with the machine, it is possible recovery
would be less appropriate, and likely the injury would
not have occurred.

Although the lead opinion acknowledges that "con-
cealing a known danger from an employee who has

---

[2] *Ante* at 182.

no independent knowledge of the danger may be evidence of an intent to injure," it apparently allows two pieces of evidence that should be discredited by that omission to overpower it. Unlike the lead opinion, I ascribe much greater significance to the wilful concealment of the danger from Travis. In both of the cases relied on by the lead opinion, *Film Recovery* and *Gulden*, the courts relied on the failure of the employers to apprise the employees of the danger. In all these cases, it can be assumed that the employer failed to inform the employees of the risk because the employer feared the employees, being rational, would refuse to further expose themselves to the risk. The gravity of such a likely conclusion cannot be understated, for it implies that the defendants themselves felt the risk was unreasonable.[3]

Most remarkably, the lead opinion suggests that even if this risk was unacceptable, Travis should nonetheless be limited to a worker's compensation recovery because Travis' supervisor did not "willfully disregard" the danger she was exposed to. The lead opinion reasons that because the supervisor adjusted the machine, and because the supervisor could operate the machine so adjusted without severing his hands, he did not wilfully expose Travis to the risk. But this only shows that the *supervisor* did not knowingly expose *himself* to the risk. As noted, the crucial

---

[3] The Court of Appeals in *Cavalier Mfg Co v Employers Ins of Wausau,* 211 Mich App 330, 338; 535 NW2d 583 (1995), noted that in cases where recovery was allowed:

> Either the employee was unable to avoid the injury despite the exercise of due care or the employee was deprived of the opportunity to use due care by the employer's concealment of information concerning the existence or nature of the risk.

fact that the supervisor neglected to inform Travis of the danger inherent in operating the press reinstates all the culpability the lead opinion attempts to remove by reciting the supervisor's uncommunicated knowledge and unreplicable accomplishments.

Because both the employers in these cases exposed workers to risks within the coverage of subsection 131(1), I would reinstate both claims.

CAVANAGH, J., concurred with LEVIN, J.