**Brenda ARNOLD, Personal Representative of the Estate of Donald Arnold, Deceased, Plaintiff,**

v.

**NATIONAL STEEL CORPORATION, GREAT LAKES DIVISION, a Delaware corporation, Defendant.**

No. 99–72822.

United States District Court,
E.D. Michigan,
Southern Division.

April 18, 2000.

Peter J. Lyons, Swanson & Lyons, PC, Detroit, MI, for Plaintiff.

Kevin S. Hendrick, Elizabeth Jolliffe Basten, Jay M. Berger, Clark Hill PLC, Detroit, MI, for Defendant.

OPINION AND ORDER

FEIKENS, District Judge.

## I. Introduction

The plaintiff, Brenda Arnold, as personal representative of the estate of her husband, Donald Arnold (Arnold), brings suit for damages as a result of his death. On November 18, 1997, he was killed while employed at National Steel Corporation (National Steel), the defendant herein.

Under Michigan law—applicable in this diversity case—the Worker's Disability Compensation Act, M.C.L.A. § 418.131, provides the exclusive remedy for workplace injuries unless injury was caused by an employer's intentional tort. This intentional tort exception reads:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury. . . .

> The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. . . .

M.C.L.A. § 418.131. In the controlling cases, *Travis v. Dreis & Krump Mfg. Co.* and *Golec v. Metal Exchange Corp.*, 453 Mich. 149, 551 N.W.2d 132 (1996), the Michigan Supreme Court read this last quoted sentence as applicable "when there is no direct evidence of an intent to injure, and intent must be proved with circumstantial evidence." *Travis*, 453 Mich. at 173, 551 N.W.2d 132. "The issue of whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question." *Travis v. Dreis & Krump Mfg. Co.*, 453 Mich. 149,

187, 551 N.W.2d 132 (1996) (citation and quotation marks omitted).

The defendant having moved for summary judgment, I must determine whether the plaintiff has submitted evidence that the defendant's employees committed an intentional tort. Specifically, in order for the plaintiff to successfully defend against the defendant's motion, the plaintiff must produce evidence of 1) actual knowledge on the part of the defendant's employees; 2) that Arnold was certain to be injured; and 3) that the defendant's employees willfully disregarded this knowledge.

## II. Factual Background

According to the accident report, Arnold was fatally injured when he was trapped between an overhead crane, the # 274 crane, and a building column while he stood on the crane's railway. This death occurred in Building J at National Steel's Great Lakes Division in Ecorse, Michigan. Within that building are four overhead cranes, two of which were involved here, the # 135 crane and the # 274 crane. Both cranes span the width of Building J. One end of each crane sits on the railway along the north wall; the other end sits on the railway along the south wall. The cranes move only east and west. The cranes share the same railways and thus can be moved adjacent to each other. Hanging from each crane is a trolley, which moves from north to south, that is from railway to railway, underneath the crane. Because the crane operator sits six to eight feet below the railways, he does not have a complete view of the area above the railways.

On the day of Arnold's death, Arnold, John Mazzeppa (Mazzeppa), and Ron McKinney (McKinney), were to continue to build a scaffolding on top of the trolley of the # 135 crane. Before starting the job, this crew of three carpenters needed to move the trolley of the # 135 crane. To have this done, Mazzeppa went to the pick-ler operations office and asked William Hibner (Hibner), the pickler process manager, to have the trolley moved. Hibner reminded Mazzeppa to obtain a # 2055 yellow safety card and to give it to the # 274 crane operator, Kenneth Wasilewski (Wasilewski). Such a card informs a crane operator that men are working nearby and/or that warning lights, bumpers and torpedoes[1] are nearby. Hibner did not know whether the bumpers, lights and torpedoes were in place when he talked to Mazzeppa. *See* Hibner Dep., p. 17. He said that he thought that the safety devices would be placed after Wasilewski moved the # 274 crane and the trolley of the # 135 crane. *See id.* at 23. Mazzeppa obtained a # 2055 yellow safety card, went to the # 274 crane, and sent the card up to Wasilewski, who signaled that he had received it.

While Mazzeppa and McKinney prepared their equipment, Arnold alone went onto the south railway to set up the warning lights, bumpers, and torpedoes to keep the area where the three-man crew would work safe from the adjacent # 274 crane.

Meanwhile, Hibner told the crew coordinator, Ted Luciow, to radio Wasilewski and instruct him to move the # 274 crane toward the # 135 crane and move the trolley of the # 135 crane. According to Hibner's deposition, it did not occur to him that Arnold would already be up on the railway placing the safety devices. Hibner Dep., p. 21.

Holding the # 2055 yellow safety card and, then, having received the conflicting radio instructions, Wasilewski "thought... that whatever conflict there was had already been resolved before I went down that way [i.e. toward the # 135 crane]." Dep. of Wasilewski, p. 19. Wasilewski moved the # 274 crane to within fifty or seventy-five feet of crane # 135, stopped, and backed up five to ten feet.

1. Torpedoes are explosive charges placed on the railway. When a crane hits a torpedo, the torpedo explodes and alerts the crane operator to stop.

Wasilewski got out of the crane and saw Arnold lying in the south crane railway. Arnold was fatally injured.

## III. Arguments and Analysis

Summary judgment is proper if the evidence submitted shows that there is no genuine issue of material fact and that the moving party, here the defendant, is entitled to judgment as a matter of law. *See Nix v. O'Malley*, 160 F.3d 343, 347 (6th Cir.1998). I consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party, here the plaintiff. *See id.* As non-moving party, the plaintiff cannot rely on conclusory allegations to counter a motion for summary judgment. *See id.*

The defendant moves for summary judgment arguing that there is no evidence to meet any of the three elements set out by the court in *Travis*, i.e., that there is no evidence any employee had 1) actual knowledge; 2) that an injury was certain to occur; and 3) willfully disregarded that knowledge.

In opposition to the motion, the plaintiff focuses on the actions of William Hibner, the pickler process manager. "A plaintiff may establish a corporate employer's actual knowledge that an injury would follow by showing that a supervisory or managerial employee had actual knowledge that an injury would follow...." *Travis*, 453 Mich. at 173, 551 N.W.2d 132. The plaintiff contends that:

> Mr. Hibner knew that when employees in Great Lakes Steel are working on crane railways when safety devices had not been placed and when adjacent cranes are operative that injury is certain to occur. Moreover, Mr. Hibner knew of and created the condition which placed Donald Arnold directly in the path of the # 274 crane.

Plaintiff's Response, p. 5–6.

The plaintiff's argument fails because Hibner did not have actual knowledge that Arnold was up on the crane railway. When Hibner called for the # 274 crane to be moved, at best, he actually knew that the crew of carpenters would go up to the crane railway at some point. But, the plaintiff has put forward no evidence that Hibner knew when any of the crew would go up to the crane railway and there is no evidence that Hibner knew that Arnold, or any other person, would be up on the railway before the # 274 crane was moved. Without knowledge of Arnold's whereabouts, Hibner could not have had "actual knowledge" that an injury was "certain to occur."

The plaintiff states that "Mr. Hibner placed Donald Arnold on the rails without advising him of the fact that the # 274 crane was operational." Plaintiff's Response, p. 7. But, the plaintiff uses the verb "placed" too loosely. Arnold went up on the crane railway on his own; Hibner had no knowledge that Arnold was on the railway.

Even if Hibner should have known that Arnold would go up on the railway, the standard is actual knowledge, and such constructive knowledge is not sufficient. *See Travis*, 453 Mich. at 173, 551 N.W.2d 132. The plaintiff has provided no evidence that Hibner had actual knowledge that an injury was certain to occur.

Nor could it be said that the injury was "certain to occur." The plaintiff asserts that the injury was "certain to occur" because Hibner exposed Arnold to a "continuously operative dangerous condition." Plaintiff's Response, p. 6. But, the plaintiff does not explain what that condition was.

This case does not involve a continuously operative dangerous condition. The danger in this case was from an adjacent crane. Even assuming that the adjacent crane created a dangerous condition, Arnold was not continually exposed to it. Arnold's exposure was unlike the exposure of the scrap metal worker in *Golec*, who repeatedly placed potentially explosive scrap metal in the furnace, *see Golec*, 453 Mich. at 186, 551 N.W.2d 132, and unlike

the exposure of the workers in the *O'Neil* case, who were continually exposed to hydrogen cyanide gas. *See Travis*, 453 Mich. at 178, 551 N.W.2d 132 (describing *People v. O'Neil*, 194 Ill.App.3d 79, 141 Ill.Dec. 44, 550 N.E.2d 1090 (1990), as an example of a continuously operative dangerous condition).

Finding no continuously operative dangerous condition does not end the "certain to occur" inquiry. "[A]n injury resulting from a single highly risky task" could satisfy this inquiry "under appropriate circumstances." *Travis*, 453 Mich. at 181, n. 18, 551 N.W.2d 132.

In an effort to establish that an injury to Arnold was certain to occur, the plaintiff states that:

> Hibner was aware that five months prior there had been another individual killed while working on the crane rails under circumstances nearly identical to this in the sense that the worker, James Brillhart, was working on a rail where no safety devices had been placed.

Plaintiff's Response, p. 6. After the Brillhart death, the defendant revised crane safety procedures, distributed them to employees, and held meetings regarding these procedures. Because the defendant revised crane safety procedures and because it expected employees to follow those procedures, it cannot be said that the defendant or one of its employees, Hibner or anyone else, knew based on the earlier accident that a similar accident was "certain to occur." *See Glockzin v. Nortek*, 815 F.Supp. 1050, 1053–54 (W.D.Mich. 1992) (holding, in an intentional tort case, that earlier electrocutions did not make injury-producing electrocution "certain to occur" where the employer took remedial measures after the earlier electrocutions). These are not the circumstances in which an injury from a single, highly risky task could be considered "certain to occur." *See Travis*, 453 Mich. at 181, n. 18, 551 N.W.2d 132.

Even if the revision of the crane safety procedures could be said to be some evidence that defendant's employees knew that another incident similar to the Brillhart incident was "certain to occur," there is no evidence that Hibner or anyone else willfully disregarded such knowledge. The plaintiff may be right to focus on Hibner as the person most responsible for the accident. But, even if negligent, there is no evidence that Hibner "willfully disregarded" actual knowledge that an injury was certain to occur as must be produced for the plaintiff's claim to survive this summary judgment motion. *See Travis*, 453 Mich. at 178–80, 551 N.W.2d 132.

## IV. Conclusion

Since the plaintiff has produced no evidence that Hibner had actual knowledge of Arnold's presence on the crane railway, nor evidence that the injury was "certain to occur," nor evidence that Hibner "willfully disregarded" any knowledge of such an injury, plaintiff's case, as a matter of law, does not fall within the intentional tort exception to Michigan's Worker's Disability Compensation Act. The plaintiff's exclusive remedy is through worker's compensation. Thus, I GRANT the defendant's motion for summary judgment.

IT IS SO ORDERED.