TRAVIS v DREIS AND KRUMP MANUFACTURING COMPANY

Docket No. 163715. Submitted July 6, 1994, at Grand Rapids. Decided September 19, 1994, at 9:20 A.M. Leave to appeal sought.

Aimee S. Travis brought an action in the Montcalm Circuit Court against Dreis and Krump Manufacturing Company and Greenville Wire Products Company, seeking damages for injuries sustained while she was an employee of Greenville Wire when a machine that she was operating malfunctioned. She alleged that the intentional tort exception to the exclusive remedy provision of the Workers's Disability Compensation Act, MCL 418.131(1); MSA 17.237(131)(1), was applicable because Greenville Wire had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. The court, James K. Nichols, J., granted summary disposition for Greenville Wire after finding that the facts as alleged by the plaintiff did not show an intentional tort. The plaintiff appealed.

The Court of Appeals *held*:

1. The facts alleged by the plaintiff, as supported by the proofs, were sufficient to establish that Greenville Wire had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge.

2. The trial court erred in reasoning that, because the plaintiff had operated the machine for an hour without a mishap before it malfunctioned, the plaintiff did not establish that an injury was certain to occur.

3. The willingness of the plaintiff's supervisor to operate the machine himself on the day of the accident to show the plaintiff how to perform her task did not establish that the supervisor, who allegedly had knowledge regarding the machine's tendency to malfunction, was not acting in wilful disregard of actual knowledge that an injury was certain to occur when he required the plaintiff, who had no knowledge regarding the machine's tendency to malfunction, to operate the machine.

Reversed and remanded.

*Law Offices of Jeffrey H. Feldman, P.C.* (by *Paul L. Kaliszewski*), for the plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for Greenville Wire Products Company.

Before: HOLBROOK, JR., P.J., and MURPHY and J. C. KINGSLEY,* JJ.

MURPHY, J. Plaintiff appeals as of right from an order granting summary disposition pursuant to MCR 2.116(C)(10) for defendant Greenville Wire Products Company. Plaintiff was an employee of Greenville Wire. She filed this suit alleging that, as a result of an intentional tort attributable to Greenville Wire, she suffered amputation of her right and left fifth fingers and multiple crushing injuries to both hands. The trial court granted summary disposition on the ground that her claim did not fall under the intentional tort exception of the Worker's Disability Compensation Act. We reverse the order of summary disposition and remand this case to the trial court for further proceedings.

MCL 418.131(1); MSA 17.237(131)(1) of the Worker's Disability Compensation Act provides:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. *An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge.* The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall

* Circuit judge, sitting on the Court of Appeals by assignment.

not enlarge or reduce rights under law. [Emphasis added.]

The issue whether the facts alleged by a plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as a plaintiff alleges is a question of fact for the jury. *Adams v Shepherd Products, US, Inc,* 187 Mich App 695, 696-697; 468 NW2d 332 (1991); *McNees v Cedar Springs Stamp Co,* 184 Mich App 101, 104; 457 NW2d 68 (1990). In this case, the relevant question is whether the facts alleged by plaintiff are sufficient to establish that Greenville Wire had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. The state of mind of Jay Clarke, plaintiff's supervisor at the time of the accident, may be imputed to the state of mind of defendant Greenville Wire. See *Smith v General Motors Corp,* 192 Mich App 652, 657; 481 NW2d 819 (1992).

Plaintiff had been working for Greenville Wire for about seven months before her injury. On the day of the injury, Clarke assigned plaintiff to operate a brake press that ran by pushing palm buttons. The brake press was designed not to run unless the operator's hands were on the palm buttons. Plaintiff was required to produce parts by placing ten straight wires into the die space of the brake press, pushing the palm buttons to make the top ram come down and shape the wires, and then reaching into the die space to remove the wires that had been shaped. Plaintiff had operated this brake press on one prior occasion but she had never been required to reach into the die space of this brake press or any other machine. Clarke knew that this particular brake press had an ongoing problem with double cycling, which means

it occasionally continued its next cycle without the operator's hands on the palm buttons. Before plaintiff operated the brake press on this day, Clarke showed plaintiff how to perform the task by doing it himself for a few cycles. Clarke did not inform plaintiff about the problem with double cycling and plaintiff had no knowledge of it on her own.

After she operated the brake press for about an hour, the brake press malfunctioned by double cycling. Plaintiff was injured when the double cycling occurred while her hands were in the die space. This was the only time that the brake press had double cycled while she was operating it.

At the time of the accident, Rodney King worked for Greenville Wire as a tool room supervisor. King testified at a deposition that on the day of the accident, before plaintiff was assigned to the brake press on which she was injured, he had been informed that this brake press had a tendency to double cycle. King learned about the problem from another operator, who refused to operate the machine.

King checked the machine that day and determined that it was double cycling. He made a number of adjustments that did not seem to help. King determined that the problem could not be fixed by making adjustments from the outside of the machine and that it would be necessary to tear down the machine in order to fix the problem. He then informed Clarke that the brake press was in need of repair and strongly advised Clarke to shut down the machine. In addition, King told Clarke that the problem was something that could not be adjusted and that the machine needed to be shut down and fixed or rebuilt. Further, King told Clarke that somebody would get hurt if the brake press was run. King was told that the brake press

would be used because parts needed to be shipped out and there was not enough time to shut down the machine.

Jay Clarke was production manager at Greenville Wire at the time of the accident. In an affidavit, Clarke stated that in the thirty days preceding the injury he had repeated problems with double cycling on this particular brake press. Clarke made inquiries about the brake press and was told that it had "linkage problems." At the direction of the men who worked on the machines, Clarke adjusted the linkage. After these adjustments, the brake press would function properly for one to two weeks or possibly only a day or two and then it would begin double cycling again. During the thirty days preceding the accident, the brake press was used by eight to ten different operators. In each instance when the press double cycled, each operator was able to identify the problem, avoid injury, and report it to Clarke. Clarke then would have the press shut down until repair work was complete. In Clarke's opinion, an injury could be avoided even if the press was double cycling because the press moved slowly. After Clarke's conversation with King on the day of the accident, further repairs were performed on the machine and Clarke believed it was functioning properly.

In another statement, Clarke admitted that he had assigned plaintiff to this brake press on the day of the accident. Further, Clarke agreed that plaintiff was a novice in terms of working on these types of machines. Clarke also acknowledged that different repair people had adjusted the machine more than once but that nobody had torn down the brake press to repair it before the accident.

The trial court granted summary disposition because it could not find that the facts as alleged by plaintiff showed that Greenville Wire had "ac-

tual knowledge that an injury was certain to occur and that the employer wilfully disregarded that knowledge." The trial court reached this conclusion by pointing out that plaintiff had operated this machine for about an hour and that nothing had occurred in any unusual manner regarding the machine during that period of time.

By pointing out that plaintiff operated this brake press for an hour without a mishap, the trial court indicated that the alleged facts were not sufficient to establish that an injury was certain to occur. Apparently, the trial court reasoned that if plaintiff could operate the brake press without mishap, an injury was not certain to occur. This reasoning is not supported by the published opinions in which this Court determined that a plaintiff had alleged facts sufficient to constitute an intentional tort. See *Zuke v Fritz Enterprises, Inc,* 202 Mich App 572, 574; 509 NW2d 787 (1993); *Adams, supra,* 698; *McNees, supra,* 105. In these cases, the machines that had caused the plaintiffs' injuries did not cause injuries every time the machines had been used. *Id.* Nonetheless, this Court did not conclude that the ability to avoid injury necessarily means that an injury was not certain to occur. Thus, the trial court in this case required a degree of certainty not supported by the case law.

Similarly, we reject Greenville Wire's argument that Clarke's willingness to operate the brake press himself on the day of the accident establishes that he was not acting in wilful disregard of actual knowledge that an injury was certain to occur because Clarke would not have willingly hurt himself. The alleged facts show that Clarke operated the brake press for a few cycles with knowledge that it had a tendency to double cycle. Presumably, he approached operation of the press

with such knowledge and appropriate caution in mind. In contrast, plaintiff faced a greater danger because she was unaware of the problem and was required to work on the machine for a longer period of time. Although an injury may not have been certain to occur to Clarke, the same conclusion does not necessarily apply to plaintiff, who was required to reach into the die space as part of a repetitive task without being informed of the danger.

We find the facts alleged in this case, as supported by the proofs, are sufficient to establish that Greenville Wire had actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge. The alleged facts show that Clarke had been informed before the accident that the brake press was double cycling and that it was dangerous and someone was going to get hurt if it was run. Further, Clarke had been told that the problem would not be solved by continuing to make the same adjustments and that the necessary repairs would require the machine to be shut down. In addition, Clarke continued to run the machine without shutting it down because such repairs would take too long and the brake press was needed to produce parts. Clarke assigned plaintiff to this brake press and showed her how to perform the task without informing her about the problem of double cycling, even though Clarke knew that plaintiff was a novice on the job. In our opinion, these allegations, if proven, are sufficient to establish that an injury was certain to occur and that Greenville Wire wilfully disregarded knowledge that an injury was certain to occur.

Accordingly, the trial court erred in granting summary disposition to defendant.

Reversed and remanded.