*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRY SEARCY, Individually and as Personal
Representative of the ESTATE OF BRYANT
SEARCY, and CHASADIE SEARCY,

UNPUBLISHED
May 30, 2024

Plaintiffs-Appellants,

v

No. 365111
Wayne Circuit Court
LC No. 22-008614-CZ

COUNTY OF WAYNE, WAYNE COUNTY
SHERIFF'S OFFICE, ESTATE OF BENNY
NAPOLEON, WARREN EVANS, RAPHAEL
WASHINGTON, DANIEL PFANNES, and
ROBERT DUNLAP,

Defendants-Appellees.

SHERRY SEARCY, Individually and as Personal
Representative of the ESTATE OF BRYANT
SEARCY, and CHASADIE SEARCY,

Plaintiffs-Appellees,

v

Nos. 365114; 365118
Wayne Circuit Court
LC No. 22-008614-CZ

COUNTY OF WAYNE, WAYNE COUNTY
SHERIFF'S OFFICE, ESTATE OF BENNY
NAPOLEON, and WARREN EVANS,

Defendants,

and

RAPHAEL WASHINGTON, DANIEL PFANNES,
and ROBERT DUNLAP,

Defendants-Appellants.

Before: FEENEY, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

This tort action arises from the death of Wayne County Sheriff's Deputy Bryant Searcy. Deputy Searcy was murdered by an inmate while working at the Wayne County Jail. Defendants moved for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction), (C)(7) (governmental immunity), and (C)(8) (failure to state a claim for relief), asserting that plaintiffs' claims were barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, and by the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* Defendants argued that plaintiffs were unable to establish an intentional tort under the WDCA. In a November 2022 order, the trial court dismissed plaintiffs' claims against defendants Wayne County, the Wayne County Sheriff's Office, the Estate of Benny Napoleon, and Warren Evans on governmental-immunity grounds, but denied summary disposition under the GTLA for defendants Raphael Washington, Daniel Pfannes, and Robert Dunlap. The court denied summary disposition for all defendants under the WDCA.

In Docket No. 365111, plaintiffs appeal by leave granted the portion of the trial court's order dismissing their claims against Wayne County, the Wayne County Sheriff's Office, the Estate of Napoleon, and Evans under the WDCA and GTLA. In Docket No. 365114, defendants Washington, Pfannes, and Dunlap appeal by leave granted the portion of the trial court's order denying their motion for summary disposition under the WDCA. In Docket No. 365118, defendants Washington, Pfannes, and Dunlap appeal as of right the portion of the trial court's order denying their motion for summary disposition under the GTLA. On July 7, 2023, this Court consolidated the appeals.[1]

In Docket No. 365111, we affirm the portion of the trial court's order granting summary disposition to defendants Wayne County and the Wayne County Sheriff's Office as to plaintiffs' WDCA claim, and to the Estate of Napoleon and County Executive Evans as to plaintiffs' state-law constitutional tort claim. In Docket No. 365114, we reverse the portion of the order denying summary disposition of plaintiffs' WDCA claims as to Washington, Pfannes, and Dunlap. Finally, in Docket No. 365118, we reverse the trial court's order denying defendants' Washington, Pfannes, and Dunlap summary disposition as to plaintiffs' GTLA and state-law constitutional tort claims.

## I. FACTUAL BACKGROUND

On September 2, 2020, Deputy Searcy was working at the Wayne County Jail, performing the nighttime lockdown procedure. Although jail policy required this procedure to be performed by two officers, Deputy Searcy was working alone. While Deputy Searcy was doing the lockdown

---

[1] *Estate of Searcy v Wayne Co*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket No. 365111); *Estate of Searcy v Wayne Co*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket No. 365114); *Estate of Searcy v Wayne Co*, unpublished order of the Court of Appeals, entered July 7, 2023 (Docket No. 365118).

-2-

procedure, DeAndre Williams, an inmate at the jail, escaped from his jail cell after jamming the mechanical lock with a pencil eraser. Williams attacked Deputy Searcy and placed him in a chokehold. Deputy Searcy died as result of asphyxiation.

Plaintiffs, Deputy Searcy's wife and daughter, brought this action against Wayne County; the Wayne County Sheriff's Office; County Executive Evans; Sheriff Napoleon; Undersheriff Daniel Pfannes; Deputy Chief Raphael Washington; and Robert Dunlap, the Chief of Jails and Director of Classifications for the Sheriff's Office's Jail Division. Plaintiffs allege that officers at the jail were regularly required to work forced overtime because of significant understaffing. On the day of his death, Deputy Searcy was working overtime and had already worked at least 15 hours. Plaintiffs also allege that the jail facility was very old, and that many of the locks and security cameras installed to monitor officer safety were not working properly. Plaintiffs further allege that officers often did not have access to functioning computers. Additionally, although the jail had a policy that required officers to work with a partner during the nighttime lockdown procedure, plaintiffs allege that this policy was not enforced. According to plaintiffs, the conditions at the jail caused a continually operating dangerous condition for officers.

In Count I, plaintiffs alleged that Wayne County, the Wayne County Sheriff's Office, Washington, Pfannes, and Dunlap were liable for the commission of an intentional tort under an exception to the WDCA's exclusive-remedy provision, MCL 418.131(1). In Count II, plaintiffs alleged that Wayne County, the Wayne County Sheriff's Office, County Executive Evans, Sheriff Napoleon, Washington, Pfannes, and Dunlap were liable for violating Deputy Searcy's right to bodily integrity, contrary to the Michigan Constitution, Const 1963, art 1, § 17. In Count III, plaintiffs asserted claims for loss of consortium. Defendants asserted governmental immunity and the exclusive-remedy provision of the WDCA as affirmative defenses.

All defendants moved for summary disposition. They argued that plaintiffs were limited to the relief available under the WDCA, which is the exclusive remedy against an employer when an employee is injured. Defendants argued that plaintiffs could not establish an intentional tort in avoidance of the exclusive-remedy provision. Defendants further argued that to the extent that plaintiffs' claims were not barred by the WDCA, all defendants were entitled to dismissal on the basis of governmental immunity. In particular, defendants argued that Wayne County and the Wayne County Sheriff's Office were entitled to immunity under MCL 691.1407(1) because they are governmental agencies and the operation of a jail is a governmental function. Defendants argued that County Executive Evans and Sheriff Napoleon were both entitled to absolute immunity under MCL 691.1407(5) as the highest elected officials of their offices. With regard to Washington, Pfannes, and Dunlap, defendants argued that they were entitled to immunity under MCL 691.1407(2)(c) because their actions occurred in the course of their employment and were within the scope of their authority, their conduct did not amount to gross negligence, and plaintiffs could not establish that their alleged conduct was the proximate cause of Deputy Searcy's death. Defendants further argued that plaintiffs could not pursue claims against them for violations of the state constitution.

In response, plaintiffs argued that the facts supported the existence of an intentional tort in avoidance of the exclusive-remedy provision of the WDCA because the conditions at the jail involved a continually dangerous operating condition, and that this exception was also an exception to governmental immunity under the GTLA. Plaintiffs relied on defendants' conscious

and deliberate decisions to understaff the jail and overwork the existing staff, while also ignoring related safety procedures, including partnering requirements during lockdown procedures. Plaintiffs also asserted that defendants were aware of defective safety equipment in the jail, including malfunctioning or nonfunctional computers, security cameras, and locks, and were also aware of prior attacks on officers by jail inmates. Plaintiffs also clarified that they were not relying on a theory of gross negligence to defeat Washington's, Pfannes's, and Dunlap's claims of governmental immunity, but rather were proceeding under an intentional-tort theory with regard to these defendants. Plaintiff also argued that the individual defendants were not entitled to governmental immunity for any claims brought under the state constitution.

The trial court found that Wayne County, the Wayne County Sheriff's Office, County Executive Evans, and Sheriff Napoleon were entitled to summary disposition on the basis of governmental immunity under the GTLA, but disagreed that governmental immunity applied to protect Washington, Pfannes, and Dunlap from liability. The trial court also denied summary disposition with respect to plaintiffs' claim predicated on the existence of an intentional tort under the WDCA. These appeals followed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendants moved for summary disposition under MCR 2.116(C)(4), (7), and (8).

A motion for summary disposition based on governmental immunity is properly brought under MCR 2.116(C)(7). *Odom v Wayne Co,* 482 Mich 459, 466; 760 NW2d 217 (2008). In reviewing a motion under MCR 2.116(C)(7), a court must accept the allegations in the plaintiff's complaint as true unless contradicted by documentary evidence. *Kincaid v Cardwell,* 300 Mich App 513, 522; 834 NW2d 122 (2013). Any affidavits, depositions, admissions, or other admissible documentary evidence submitted by the parties must be viewed in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party is entitled to judgment as a matter of law because it has immunity. *Id.* If the evidence establishes a question of fact concerning whether the defendant is entitled to immunity as a matter of law, the motion must be denied and the factual dispute must be submitted to the trier of fact. *Id.* at 523. Whether governmental immunity applies to undisputed facts is a question of law that is reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006).

A motion under MCR 2.116(C)(8) "tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. The trial court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. The motion "may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.*

Regarding MCR 2.116(C)(4), in *Wells Fargo Rail Corp v State of Michigan*, 344 Mich App 351, 358; 1 NW3d 373 (2022), this Court explained:

-4-

Summary disposition under MCR 2.116(C)(4) is proper when a "court lacks jurisdiction of the subject matter." MCR 2.116(C)(4). "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Summer v Southfield Bd of Ed*, 310 Mich App 660, 668; 874 NW2d 150 (2015) (quotation marks, citation, brackets, and ellipsis omitted). The issue of subject-matter jurisdiction presented in this case involves questions of statutory interpretation and constitutional law, which we review de novo. *Midland Cogeneration Venture Ltd Partnership v. Naftaly*, 489 Mich 83, 89; 803 NW2d 674 (2011).

### B. DOCKET NO. 365111 AND 365114: WDCA INTENTIONAL TORTS AS AN EXCEPTION TO GTLA IMMUNITY

In Docket No. 365111, plaintiffs argue that the trial court erred by granting summary disposition in favor of Wayne County and the Wayne County Sheriff's Office on the basis of governmental immunity where an exception to the exclusive remedy provision in the WDCA allows that an intentional tort is grounds for finding liability, even if the employer is a governmental entity. In Docket No. 365114, defendants Washington, Pfannes, and Dunlap argue that plaintiffs' claims are barred by the WDCA and that plaintiffs cannot show that they committed an intentional tort against Deputy Searcy. We conclude that plaintiffs' WDCA claims are barred as to all defendants.

The trial court dismissed Wayne County and the Wayne County Sheriff's Office on the basis of governmental immunity, stating:

> With regards to Wayne County and the Wayne County Sheriff['s] Department, the Estate of Benny Napoleon and Warren Evans based on the pleadings filed in this case, I do find they are immune based on absolute immunity pursuant to MCL 691.1407(5) and I am granting defendants' motion to dismiss these defendants.

However, the court denied defendants' motion as to defendants Washington, Pfannes, and Dunlap, stating:

> As to the remaining defendants, I'm not quite convinced, but I think it's sufficient to survive [the] governmental immunity claim at this time that plaintiff has plead an intentional tort exception. And that going through the Ross analysis factor one, was [sic] the acts undertaken during the course of employment. Everyone agrees they were. I think the issue in section 2, were the acts undertaken in good faith and not undertaken with malice. I think plaintiff may have an argument there. I think these acts were discretionary with regards to running the jail and not ministerial. They required decision making.

Plaintiffs argue that the intentional-tort exception to the WDCA's exclusive-remedy provision, MCL 418.131(1), operates as an exception to the immunity afforded by the GTLA under MCL 691.1407. The trial court appears to have been confused by this argument, at least in regard

to Washington, Pfannes, and Dunlap, because it stated that it was "having a little hard time with plaintiff's argument," which it described as being "all over the map" and "difficult to follow when you specifically address a governmental defendant." Moreover, the court at least implicitly rejected plaintiffs' argument by ruling that Wayne County and the Wayne County Sheriff's Office were both entitled to immunity despite also ruling that plaintiffs "pleaded an exception to the workers' comp at this time based on a continuously dangerous condition." We will dispel any confusion.

MCL 691.1407 provides, in relevant part:

(1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

* * *

(5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Although the trial court erroneously stated that Wayne County and the Wayne County Sheriff's Office were entitled to governmental immunity under MCL 691.1407(5), they are instead entitled to immunity under MCL 691.1407(1). MCL 691.1407(2) provides immunity to Washington, Pfannes, and Dunlap.

Further, although the GTLA also contains multiple exceptions to this immunity, plaintiffs do not rely on any of those exceptions. Plaintiffs additionally do not dispute that defendants were engaged in the exercise or discharge of a governmental function,[2] or argue that "[t]he GTLA does not contain an intentional tort exception to governmental immunity from tort liability." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 328; 869 NW2d 635 (2015) (quotations and citation omitted). Instead, plaintiffs argue that the intentional-tort exception to the WDCA's exclusive-remedy provision, MCL 418.131(1), is also an exception to the immunity afforded by the GTLA. We generally agree with that argument. In *Madison v City of Detroit*, 208 Mich App 356; 527 NW2d 71 (1995), overruled 450 Mich 976 (1996),[3] this Court squarely addressed whether the WDCA's intentional-tort exception permits a plaintiff to bring an action against a governmental agency that would otherwise be entitled to immunity under the GTLA. We held that the GTLA does *not* shield a governmental employer from liability under those circumstances:

> [W]hen the government is the plaintiff's employer, the governmental immunity statute must be read *in pari materia* with the WDCA. MCL 691.1401 *et seq*.; MSA 3.996(101) *et seq*., MCL 418.101 *et seq*.; MSA 17.237(101) *et seq*. First, we are unable to call to mind even one governmental function which does not require that employees carry out necessary everyday tasks in the course of employment. The WDCA, not the governmental immunity act, defines the duties of the government, acting as an employer, to an injured employee.
>
> Second, the governmental immunity act takes great pains to protect government employees who might be subject to tort liability from an outside source when their actions are not grossly negligent. The protection is broad and extends to employees at all levels, not simply to those in the highest positions of authority. It was made broad to enable common government employees to enjoy a certain degree of security as they go about performing their jobs. See *Pavlov v Community EMS*, 195 Mich App 711, 722; 491 NW2d 874 (1992). Extending fair and legitimately enacted remedies to them under the WDCA when injured on government jobs is consistent with protection afforded them against third parties by the governmental immunity act.

---

[2] Our Supreme Court has stated that "[t]he operation of a jail is clearly a governmental function[.]" *Jackson v Saginaw Co*, 458 Mich 141, 148; 580 NW2d 870 (1998).

[3] We recognize that *Madison* has since been overruled. Our Supreme Court, in lieu of granting leave to appeal, subsequently reversed this Court's decision in *Madison* in a peremptory order that stated, "[a]ssuming, *arguendo*, that there is an exception to governmental immunity for a workplace injury as a result of a governmental employer's intentional tort, the facts of this case do not constitute such an intentional tort as a matter of law." *Madison v City of Detroit*, 450 Mich 976 (1996). Nevertheless, we believe that the principles for which *Madison* stood remain good law.

Finally, the WDCA contains no language freeing the government from its requirements, regulations and restraints in other areas, but generally treats it as any other employer.

\* \* \*

We do not believe that the Legislature intended to shield any employer, particularly the government, when its agent intentionally orders an employee to commit acts certain to cause injury. We cannot believe the Legislature intended that the government escape the liability which accompanies an intentional tort under the WDCA. In its extreme, such an interpretation would protect a government agency whose supervisor orders an employee to step into water the supervisor knows is electrified, disregarding the certainty of injury. It is inconsistent with the jurisprudence of our state which imputes the state of mind of a supervisor to a corporate employer. *Travis v Dreis & Krump Mfg Co*, 207 Mich App 1, 3; 523 NW2d 818 (1994). It flies in the face of nearly all modern regulation of workplace safety.

The Legislature could not have intended that the government, unlike other employers, be permitted to hide behind a claim of immunity under facts such as those alleged here. As Justice Archer once observed, "In describing the scope of this exception, it is important to focus on the responsibility of government for its actions or omissions, not its immunity from liability." *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 215; 422 NW2d 205 (1988) (ARCHER, J., concurring in part and dissenting in part). [*Madison*, 208 Mich App at 359-361.]

However, it remains true that an exception to the exclusive remedy rule exists under the WDCA that allows for recovery where an employee can show that the employer committed an intentional tort. See *Bagby v Detroit Edison Co*, 308 Mich App 488, 491; 865 NW2d 59 (2014) ("The only exception to th[e exclusive remedy] rule is when the employee can show that the employer committed an intentional tort."). According to MCL 418.131(1),

[a]n intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court.

However, the bar for showing an intentional tort is a high one. In *Travis v Dreis and Krump Mfg Co*, 453 Mich 149, 180; 551 NW2d 132 (1996), our Supreme Court explained that the Legislature "inten[ded] to create a rigorous threshold for a claim of intentional tort[.]" To reach that threshold, the plaintiff must show proof that the defendant employer "engage[d] in a deliberate act (commission or omission) with a specific intent to injure." *Id*. at 173. If the plaintiff cannot present direct evidence, then "intent must be proved with circumstantial evidence." *Id*.

-8-

The facts of this case do not support that an intentional tort was committed against Deputy Searcy within the meaning of the WDCA. Again, "to state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." *Id*. at 172. Plaintiffs have not offered any direct evidence of an intent by either Wayne County or the Wayne County Sheriff's Office to subject officers working in the jail to actual harm from inmates. Because plaintiffs lack direct evidence of an intent to injure; they must instead show through circumstantial evidence that these defendants had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. *Id*. at 173. At best, plaintiffs have shown that these defendants were aware of the risk posed by inmates and that there were understaffing and maintenance problems in the jail that could have led to dangerous situations.

In order for an injury to be "certain to occur," there can be no doubt with regard to whether it *will* occur. *Id*. at 174. Past incidents and probabilities of risk are insufficient to prove true certainty. *Id*. That an employer "willfully disregarded" the danger means more than just failing to protect an employee who might foreseeably be injured; the employer must disregard the actual knowledge that an injury is *absolutely certain* to occur. *Id*. at 178-180. We agree that plaintiffs demonstrated that the jail environment presented dangerous circumstances for officers working there, particularly considering the types of inmates housed there, continuous understaffing problems, and the conditions of the jail. Plaintiffs also submitted evidence showing that defendants were aware of the understaffing and maintenance problems that made an inmate attack a possibility. However, this evidence does not demonstrate that defendants willfully disregarded the danger of inmates attacking officers during lockdown.

Plaintiffs concede that a jail policy required officers to conduct cell lockdowns in pairs. Plaintiffs allege that because defendants adopted this policy, they were aware that officers were routinely performing nighttime lockdown procedures alone, but declined to discipline officers for noncompliance. An investigation by the Michigan Occupational Safety and Health Administration resulted in a citation issued to the Sheriff's Office for a safety violation related to this problem, which plaintiffs say contributed to Deputy Searcy's death. But what plaintiffs ignore is that when Deputy Searcy was attacked, he was working alone, *in violation of policy*. The implementation of the policy that officers work in pairs to prevent the danger of inmate attacks is evidence that defendants were aware of the risk and were not willfully disregarding it. To the contrary, they implemented procedures to *prevent* officers from being vulnerable to attacks from violent inmates. While plaintiffs argue that defendants also knew that officers were not always following that directive, in part because of the understaffing problems and increased demands on other officers, such does not demonstrate that defendants were acting with willful disregard of the danger posed by performing lockdown procedures alone. Accordingly, plaintiffs cannot establish an intentional tort in avoidance of the exclusive-remedy provision of the WDCA. All defendants were entitled to summary disposition on plaintiffs' claim predicated on the intentional-tort exception in MCL 418.131(1). We thus affirm the portion of the order granting summary disposition to Wayne County and the Wayne County Sheriff's Office as to plaintiffs' WDCA claims, and reverse the portion of the order denying summary disposition of plaintiff's WDCA claims as to Washington, Pfannes, and Dunlap.

## C. DOCKET NO. 365118: GOVERNMENTAL IMMUNITY

In Docket No. 365118, defendants Washington, Pfannes, and Dunlap separately argue that the trial court erred by denying their motion for summary disposition on the basis of governmental immunity. We agree.

As previously noted, MCL 691.1407 provides immunity for governmental employees as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The statute defines "[g]ross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). However, MCL 691.1407(3) provides that "Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986."

In *Odom*, 482 Mich at 479-480, the Court summarized the steps for determining whether governmental immunity applies to an individual employee:

> To summarize and simplify the application of our decision, we provide these steps to follow when a defendant raises the affirmative defense of individual governmental immunity. The court must do the following:
>
> (1) Determine whether the individual is a judge, a legislator, or the highest-ranking appointed executive official at any level of government who is entitled to absolute immunity under MCL 691.1407(5).
>
> (2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.
>
> (3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the

-10-

course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross*[4] test by showing the following:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

Washington, Pfannes, and Dunlap analyze their entitlement to governmental immunity under a gross-negligence theory. It is apparent from the trial court's ruling that it also analyzed these defendants' entitlement to immunity under an intentional tort theory by referencing the factors from *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). However, plaintiffs assert on appeal that they are *not* pursuing any claim for gross negligence, but rather are proceeding under an intentional-tort theory. To be clear, even if plaintiffs had pursued this claim under a gross-negligence theory, they could not prevail because they would not be able to establish that defendants' alleged gross negligence was the proximate cause of Deputy Searcy's death within the meaning of MCL 691.1407(2)(c). As used in this subsection, "[t]he phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Robinson v City of* Detroit, 462 Mich 439, 459; 613 NW2d 307 (2000). Even if defendants failed to ensure that the jail was safe in the various ways alleged by plaintiffs, there is no genuine issue of material fact that the attack by the inmate was the one most immediate and direct cause of Deputy Searcy's death.

In *Odom*, 482 Mich at 472-473, our Supreme Court clarified the scope of governmental immunity for individuals as applied to intentional torts by reaffirming and restating the test from *Ross*. In order for a lower level employee to be immune from liability for an intentional tort, the employee must show that (1) the acts were undertaken during the course of employment and the

---

[4] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

employee was acting, or reasonably believed that he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, or were not undertaken with malice, and (3) the acts were discretionary, as opposed to ministerial. *Odom*, 482 Mich at 480; *Ross*, 420 Mich at 633-634. Although plaintiffs accurately recite this test, they fail to analyze how the evidence supports an application of the intentional-tort exception to individual immunity under the test. Rather, after reciting the *Ross* test, they merely assert: "Because Defendants have failed to prove their entitlement to qualified immunity under the *Ross* standard, the denial of their motion for summary disposition should be affirmed." Plaintiffs subsequently assert that the evidence supports an intentional-tort exception to governmental immunity on the basis of a "continually operative dangerous condition." However, that is not the test for an intentional tort for purposes of avoiding individual governmental immunity; rather, it is a means for establishing an intentional tort under the WDCA. See *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 715; 777 NW2d 205 (2009).

Plaintiffs have conflated caselaw addressing the intentional-tort exception under the WDCA with the test for analyzing a governmental employee's entitlement to immunity for intentional torts under *Odom* and *Ross*. Under the *Ross* test, Washington, Pfannes, and Dunlap were first required to show that they were acting during the course of their employment and reasonably believed that they were acting within the scope of their authority. *Ross*, 420 Mich at 633. There is no dispute that these defendants were acting within the scope of their employment and their authority at all relevant times. Furthermore, the actions alleged in support of plaintiffs' claims for these defendants involve discretionary decisions, not ministerial tasks.

The trial court appears to have denied Washington's, Pfannes's, and Dunlap's claims of immunity because it believed there was an issue of fact regarding whether they acted in good faith, and without malice. As explained in *Odom*, 482 Mich at 481-482: "The good-faith element of the *Ross* test is subjective in nature. It protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." Although plaintiffs alleged and presented evidence that defendants were aware of understaffing and equipment problems at the jail and the danger presented by inmates, the evidence demonstrated that defendants adopted policies for protecting officer safety, particularly during nighttime lockdown rounds, by requiring that officers perform lockdown procedures with a partner. Additionally, although plaintiffs presented evidence that officers frequently did not comply with this policy and criticize defendants on appeal for not enforcing it, defendants' failure to enforce safety protocols does not establish defendants' subjective lack of good faith or malicious intent. As noted, plaintiffs improperly rely on the test for establishing an intentional tort under the WDCA and do not present any meaningful argument explaining how the evidence satisfies the *Ross* test for analyzing a governmental employee's entitlement to immunity for an intentional tort. Accordingly, we hold that the trial court erred by denying summary disposition in favor of defendants Washington, Pfannes, and Dunlap on the basis of governmental immunity. This portion of the trial court's order must be reversed.

### D. DOCKET NO. 365111 AND 365118: CONSTITUTIONAL TORTS

In Docket No. 365111, plaintiffs argue that the trial court erred by dismissing Evans and the Estate of Benny Napoleon on the basis of governmental immunity where one of their claims sounded in constitutional tort. To clarify, plaintiffs do not dispute that these defendants may be

entitled to governmental immunity under MCL 691.1407; rather, they argue that because they asserted a constitutional tort claim, these defendants are not protected from liability by the GTLA. Similarly, defendants Washington, Pfannes, and Dunlap argue in Docket No. 365118 that plaintiffs cannot avoid the operation of governmental immunity to bar their claims by asserting a violation of the state constitution. We agree that plaintiffs cannot maintain a state-law constitutional tort claim against any of the named municipal defendants.

In *Smith v Dep't of Pub Health*, 428 Mich 540; 410 NW2d 749 (1987), aff'd on other grounds sub nom *Will v Mich Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), our Supreme Court addressed whether a plaintiff could sue the state of Michigan for damages in violation of the Michigan Constitution. The Court held that "[a] claim for damages against the state arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases" and is not protected by governmental immunity. *Smith*, 428 Mich at 544. Later, the Court clarified that the holding in *Smith* applies *only* to claims brought against the state of Michigan, not to municipalities or municipal government employees, in *Jones v Powell*, 462 Mich 329; 612 NW2d 423 (2000). There, the Court explained:

> [O]ur decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee. In *Smith*, our consideration of the issue focused on whether such a remedy should be inferred against the state, which is not subject to liability under 42 USC 1983. The holding in *Smith* was set forth in a memorandum opinion summarizing the Court's conclusions. It included the following:
>
> > 5) Where it is alleged that the *state*, by virtue of custom or policy, has violated a right conferred by the Michigan Constitution, governmental immunity is not available in a state court action.
>
> > 6) A claim for damages against the *state* arising from violation by the state of the Michigan Constitution may be recognized in appropriate cases.
>
> > \* \* \*
>
> *Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy. Those concerns are inapplicable in actions against a municipality or an individual defendant. Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment. *Lake Country Estates* [*Inc v Tahoe Regional Planning Agency*, 440 US 391, 400-401; 99 S Ct 1171; 59 L Ed 2d 401 (1979)]. A plaintiff may sue a municipality in federal or state court under 42 USC § 1983 to redress a violation of a federal constitutional right. *Monell* [*v New York City Dep't of Social Servs*, 436 US 658, 690 n 54 and accompanying text; 98 S Ct 2018; 56 L Ed 2d 611 (1978)]. Further, a plaintiff may bring an action against an individual defendant under § 1983 and common-law tort theories. [*Jones*, 462 Mich at 335-337 (citations omitted).]

Thus, *Jones* held that the narrow remedy created by *Smith* only applies to claims against the state government and state actors, and that "[t]hose concerns are inapplicable in actions against a municipality or an individual defendant" because municipal entities and individual employees can be sued in state or federal court under 42 USC 1983, unlike state defendants, who are protected from such suits by the Eleventh Amendment. *Id*.

The Court next addressed *Jones* in *Mays v Snyder*, 323 Mich App 1; 916 NW2d 227 (2018). There, the Court explained:

> Defendants argue that . . . the availability of any other remedy should foreclose the possibility of a judicially inferred damage remedy. Although the Supreme Court in *Jones*, 462 Mich at 337; 612 NW2d 423, stated that "*Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy," we agree with the Court of Claims' conclusion that the *Jones* Court's use of the word "only" referred to the sentence that followed, distinguishing claims against the state and *specifically limiting the Court's holding to cases involving a municipality or an individual defendant*. *Mays*, unpub op at 32, citing *Jones*, 462 Mich at 337; 612 NW2d 423. [*Mays*, 323 Mich App at 71 (emphasis added).]

Our Supreme Court reiterated this principle once again in *Mays v Governor*, 506 Mich 157, 197; 954 NW2d 139 (2020), stating:

> Like the Court of Appeals and the Court of Claims, we conclude that defendants err in their reading of *Jones*. The *Jones* Court's use of the word "only" referred to a sentence that followed, distinguishing claims against the state and specifically limiting the Court's holding to cases involving a municipality or an individual defendant.

In sum, *Smith*, *Jones*, and a litany of ensuing cases agree that state constitutional tort claims cannot be brought against municipal entities and individual defendants because there are adequate alternative remedies available. As in *Jones*, plaintiffs here are not left without a remedy, since they may instead bring a claim against the individual municipal defendants under 42 USC 1983 in relation to the alleged violation of Deputy Searcy's due-process right to bodily integrity, as well as any common-law tort claims as may apply. Plaintiffs point to no additional authority that would permit them to pursue a claim against defendants for a violation of the Michigan Constitution under the facts of this case. To the extent that they rely on *Bauserman v Unemployment Insurance Agency*, 509 Mich 673; 983 NW2d 855 (2022), for the proposition that monetary damages are an available remedy for constitutional torts, we note that the *Bauserman* Court expressly limited its holding to constitutional tort claims brought against the state. See *id*. at 708 n 13 (noting that "our holding is that the state is liable for harms it commits in violation of the Constitution; whether other entities, such as municipal governments or individual government actors, can be liable for constitutional torts is not before us, and we decline to address that question in what would be dictum."). Considering the foregoing, we conclude that the trial court did not err by granting summary disposition in favor of Evans, the Estate of Benny Napoleon, Washington, Pfannes, and Dunlap to the extent that plaintiffs' claims against them involved a claim for a violation of Deputy Searcy's rights under Const 1963, art 1, § 17.

## III. CONCLUSION

In Docket No. 365111, we affirm the portion of the trial court's order granting summary disposition to Wayne County, the Wayne County Sheriff's Office, the Estate of Benny Napoleon, and County Executive Evans. In Docket No. 365114, we reverse the portion of the order denying summary disposition to Washington, Pfannes, and Dunlap. In Docket No. 365118, we also reverse the trial court's order denying summary disposition to Washington, Pfannes, and Dunlap. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ Michelle M. Rick